# EXHIBIT 10

# OHA Decision on Petition for Reconsideration

# United States Small Business Administration
# Office of Hearings and Appeals

| | |
|---|---|
| **PAYCHECK PROTECTION PROGRAM APPEAL OF**:<br><br>**Horseshoe Bay Resort Holdings, LLC**<br><br>Petitioner<br><br>RE: SBA No. PPP-3866357206 | Issued: June 16, 2023<br><br>Decision No. **PFR-3866357206** |

James Kim on behalf of Appellant.

Michael Blumenthal on behalf of the U.S. Small Business Administration ("SBA").

### DECISION ON PETITION FOR RECONSIDERATION

### I.   INTRODUCTION AND JURISDICTION

Horseshoe Bay Report Holdings, LLC ("Petitioner") was approved for Paycheck Protection Program Loan no. 3866357206 in the amount of $2,370,474.50 (the "PPP Loan"). On January 24, 2023, SBA issued a final SBA loan review decision (the "*FLRD*") with an SBA final forgiveness amount of $0. On February 23, 2023, Petitioner filed an appeal petition with the Office of Hearings and Appeals ("OHA") seeking review of the *FLRD*. On May 9, 2023, OHA issued a Corrected Decision[1] AFFIRMING the *FLRD*. On May 18, 2023, Petitioner filed this Petition for Reconsideration ("PFR").

OHA has jurisdiction to consider this PFR. (*See* 13 C.F.R. § 134.1211(c)).

After carefully considering the evidence and arguments presented, for the reasons stated below, I **DENY** the PFR.

### II.   BACKGROUND

#### A.   Summary of Decision

On May 9, 2023, OHA issued a Corrected Decision AFFIRMING the *FLRD*. A copy of the Corrected Decision is attached hereto as Exhibit A.

---

[1] As noted in the Corrected Decision, the Corrected Decision clarified a typographical error in the Conclusion, as well as other typographical errors, but the substance of the original Decision was otherwise unchanged.

The *FLRD* concluded that the final forgiveness amount for the PPP Loan was $0. The *FLRD* set forth the following reason: "After review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards." (Corrected Decision, p. 4). The *FLRD* also determined that: "[t]he subject loan was also determined to be ineligible for an affiliation waiver as it does not have a NAICS code beginning with 72." (Corrected Decision, p. 4).

The Corrected Decision affirmed the *FLRD*:

- The Corrected Decision noted that an OHA Judge reviews a final SBA loan review decision for whether it is based on clear error of fact or law. (Corrected Decision, p. 5; 13 C.F.R. § 134.1210).
- The Corrected Decision stated that under the CARES Act, a business may be eligible for a PPP loan if the business concern "employs not more than the greater of—(I) 500 employees; or (II) if applicable, the size standard in number of employees established by the Administration for the industry" in which the business concern operates. (Corrected Decision, p. 5; Section 1102(a)(2)(36)(D)(i)(I)&(II) of the CARES Act).
- SBA determined that Petitioner and its affiliates had 593 employees. Thus, the *FLRD* was not based on clear error to the extent it determined that Petitioner and its affiliates have more than 500 employees. (Corrected Decision, p. 7).
- The Corrected Decision quoted the key language of the affiliation waiver. The CARES Act provides that during the covered period, "the provisions applicable to affiliations" under 13 C.F.R. § 121.103 "are waived with respect to eligibility for a covered loan" if "any business concern with not more than 500 employees that, as of the date on which the covered loan is disbursed, is assigned a North American Industry Classification System code beginning with 72[.]" (Corrected Decision, p. 5; Section 1102(a)(2)(36)(D)(iv)(I) of the CARES Act).
- The Corrected Decision found that the *FLRD* was not based on clear error to the extent it found that the affiliation waiver was inapplicable, citing several instances in the AR showing that Petitioner assigned itself a NAICS code beginning with 71 as of the date the loan was disbursed. (Corrected Decision, p. 7).
- The Corrected Decision summarized Appellant's/Petitioner's argument. In brief, pursuant to 13 C.F.R. § 121.107, SBA is to analyze the "primary industry" of a business and its affiliates by considering the "distribution of receipts, employees and cost of doing business[]" of the business and its affiliates. SBA, however, considered only the receipts of Petitioner, and failed to consider either Petitioner's employees and costs, or the distribution of receipts, employees and costs for Petitioner's affiliates. (Corrected Decision, pp. 7-8). Were the various factors properly considered for Petitioner and its affiliates, it would have been classified as NAICS 72. (Corrected Decision, pp. 7-8). Moreover, Petitioner argues that while it should be considered together with its affiliates for the primary industry analysis, Petitioner is considered alone when calculating its number of employees. (Corrected Decision, pp. 7-8).
- The Corrected Decision did not find Petitioner's argument to be persuasive. Focusing on the statutory language, the Corrected Decision noted that the affiliation waiver applies to an entity that "is assigned" NAICS Code 72 on the date the loan was disbursed. (Section 1102(a)(2)(36)(D)(i) of the CARES Act). Petitioner assigned itself NAICS Code 71 on

both of its tax returns, its SBA Form 3511, and on its PPP Loan Forgiveness Application. The Corrected Decision noted that Petitioner's accountant wrote a letter to the IRS to change its NAICS Code, but that letter was dated two years after the loan was disbursed. The Corrected Decision did not reach the question of whether SBA conducted a correct primary industry analysis.  (Corrected Decision, pp. 8-10).

### B. Petition For Reconsideration

In its PFR, Petitioner's argument progresses as follows:

- The CARES Act makes the PPP a Section 7(a) business loan program.  (PFR, pp. 4-5).
- SBA's Section 7(a) regulations provide that SBA determines an entity's "primary industry" for size purposes.  (PFR, pp. 5-8).
- For purposes of the affiliation waiver for entities that have a NAICS code beginning with 72, OHA erred by considering Appellant's self-assigned NAICS code on its tax return as determinative, as opposed to utilizing SBA's Section 7(a) regulations regarding size-determination and primary industry analysis.  (PFR, pp. 5-10).
- The CARES Act's use of the phrase "is assigned" in the affiliation waiver does not obviate the need to utilize an analysis under SBA's Section 7(a) regulations.  (PFR, p. 8).
- Congress generally intended broad eligibility for PPP loans.  (PFR, pp. 10-11).
- Per *Chevron*, OHA is to give deference to SBA's regulations.  (PFR, p. 11).

SBA filed a Response to the PFR.  The Response can be summarized as follows:

- Petitioner had more than 500 employees across its affiliates.  (Response, p. 9).
- Petitioner assigned itself NAICS codes beginning with 713 on its tax returns, PPP Loan Forgiveness application and SBA Form 3511.  In addition, SBA determined, based on net revenue by department, that Petitioner's primary business did not begin with NAICS Code 72, and that determination is entitled to deference.  (Response, pp. 9-11).
- Appellant's *Chevron* argument cannot be decided by OHA.  (Response, p. 11).

### III. DISCUSSION

#### A. Standard of Review

I am to review whether the request for reconsideration "clearly show[s] an error of fact or law material to the decision."  (13 C.F.R. § 134.1211.(c)(1)).

#### B. Analysis

I must deny the PFR because the PFR does not clearly show an error of fact or law that was material to the Corrected Decision.

In a nutshell, Petitioner argues that because the PPP is a Section 7(a) loan program, SBA's regulations related to Section 7(a) are incorporated into the PPP.  The lynchpin of Petitioner's argument comes from Section 1102(a)(36)(B) of the CARES Act, which provides that SBA may

guarantee covered loans "under the same terms, conditions and processes" as other Section 7(a) loans. Based on this language, the Petitioner asserts that the various SBA Section 7(a) regulations are essentially incorporated into the CARES Act by reference. (PFR, pp. 4-5). Hence, 13 C.F.R. § 121.107 is the correct provision by which to analyze whether Petitioner qualifies for the affiliation waiver: "SBA regulations further provide under 13 C.F.R. 121.107 the manner in which SBA determines the applicable NAICS code for a particular entity[.]" (PFR, p. 5). The Correct Decision erred by not applying the guidance in 13 C.F.R. § 121.107. (PFR, pp. 8-9).

The PFR glances over the opening phrase of Section 1102(a)(36)(B) – "[e]xcept as otherwise provided[.]" In several ways, the CARES Act modifies Section 7(a) rules for PPP loans. For example, non-profit entities may apply for and receive PPP loan. (Section 1102(a)(36)(D)(i)). The CARES Act also modifies the Section 7(a) size standards. The CARES Act provides that any entity may be eligible for a PPP loan if it has no more than the greater of 500 employees or the size standard in number of employees established by SBA regulation. (Section 1102(a)(36)(D)(i)). In addition, the CARES Act waives the affiliation rules set forth in the SBA regulations for "any business concern with not more than 500 employees that, as of the date on which the covered loan is disbursed, is assigned" a NAICS code "beginning with 72[.]" (citing Section 1102(a)(2)(36)(D)(iv)(I) of the CARES Act).

The CARES Act gave SBA authority to issue regulations to carry out the CARES Act. (Section 1114 of the CARES Act). To that end, SBA issued numerous interim final rules ("IFRs"). Regarding the affiliation waiver, the IFRs do not cross-reference 13 C.F.R. § 121.107 for determining the appropriate NAICS code for a borrower. Instead, the IFRs generally mirror the language in the CARES Act; the affiliation waiver applies to a business "that, as of the date on which the loan is disbursed, is assigned" a NAICS code "beginning with 72[.]" (*See, e.g., Paycheck Protection Program ("IFR 2")*, 85 FED. REG. 20817, 280818 n. 1). Subregulatory guidance is in accord. (*See Paycheck Protection Program Loans Frequently Asked Questions (FAQs) ("FAQs"),* at Question 24 (stating that SBA's affiliation rules "do not apply to any business entity that is assigned a NAICS code beginning with 72 and that employs not more than a total of 500 employees.") (available at [Paycheck-Protection-Program-Frequently-Asked-Questions_04 26 20.pdf (sba.gov)](Paycheck-Protection-Program-Frequently-Asked-Questions_04 26 20.pdf (sba.gov))) (last visited June 14, 2023)).

Consistent with the plain language of the CARES Act, the IFRs and the subregulatory guidance, Petitioner "[was]" not "assigned" a NAICS Code beginning with 72 as of the date of the loan's disbursement. The Corrected Decision explains that NAICS Codes are self-assigned in general, as well as for tax purposes. (Corrected Decision, p. 8). As of the time the PPP Loan at issue was disbursed, Petitioner assigned itself a NAICS Code that did not begin with 72 on its tax return. It also said in its SBA Form 3511 that its NAICS Code did not begin with 72. Although Petitioner would later have its accountant write the IRS to change the NAICS code, that did not occur until 2023. (Corrected Decision, p. 8; PFR, Exhibit 6).

Petitioner takes issue with the Corrected Decision's reference to the NAICS code on Petitioner's tax returns. (*See, e.g.,* PFR, pp. 8-9). But the Corrected Decision does so because SBA's guidance makes clear that a borrower's self-assignment of a NAICS code on its tax return is highly significant. As noted in the Corrected Decision, the Petitioner's PPP Loan Forgiveness

Application Form asks for Petitioner's NAICS code as reported on its tax return. (Corrected Decision, p. 9). Consistent with the directions from the PPP Loan Forgiveness Application Form, Petitioner listed the same NAICS code that it put on its tax returns: 713910. (Corrected Decision, p. 2). SBA, in turn, uses the borrower's representations and certification on the PPP Loan Forgiveness Application in reviewing whether a borrower was eligible for a PPP loan. (Corrected Decision, pp. 8-9; PPP Loan Forgiveness Application Form 3508EZ Revised July 30, 2021 (available at [PPP Loan Forgiveness Application Form 3508EZ Revised July 30, 2021 (treasury.gov)](#)) (last visited June 14, 2023); *Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act* ("*Loan Forgiveness Procedures IFR*"), 86 FED. REG. 8283, 8294(V)(1)(a)).

Placing great weight on the NAICS code in a borrower's tax return is consistent with SBA's regulations for a related PPP provision. For Second Draw PPP loans, "[t]he maximum amount of a covered loan made to an eligible entity that is assigned a [NAICS] code beginning with 72 at the time of disbursal" is potentially greater than for other borrowers. (15 U.S.C. § 636(a)(37)(C)(iv)). In an IFR, SBA clarifies that the potentially greater maximum Second Draw PPP loan is available "only if the borrower is in the Accommodation and Food Services sector and has reported a NAICS code beginning with 72 *as its business activity code on its most recent IRS income tax return*." (*Paycheck Protection Program Second Draw Loans ("Second Draw IFR")*, 86 FED. REG. 3712, 3720(III)(f)(10)) (emphasis added). Thus, a borrower's NAICS code on its tax return is determinative of whether a borrower is eligible for a greater maximum Second Draw loan amount.

It would make little sense if the SBA's regulations were read to mean, on the one hand, SBA is to engage in an analysis under 13 C.F.R. § 121.107 to determine a borrower's NAICS code for purposes of the affiliation waiver under Section 1102(a)(2)(36)(D)(iv)(I) of the CARES Act (as Petitioner advocates), and, on the other hand, that the NAICS code from the borrower's tax return is determinative of whether a borrower is eligible for a greater maximum Second Draw loan amount under 15 U.S.C. § 636(a)(37)(C)(iv) (as is clear in the *Second Draw IFR*). This is especially true when comparing the relevant statutory language between the two provisions. The affiliation waiver provides that the affiliation rules are waived for any business concern with not more than 500 employees that:

> as of the date on which the covered loan is disbursed, is assigned a [NAICS] code beginning with 72[.]

(15 U.S.C. § 636(a)(36)(D)(iv)(I)). In comparison, the maximum amount of a Second Draw covered loan made to an eligible entity:

> that is assigned a [NAICS] code beginning with 72 at the time of disbursal . . . .

(15 U.S.C. § 636(a)(37)(C)(iv)). The "is assigned" language is identical between the two provisions, and the date or time of disbursal language is very similar. Thus, it is hard to envision why SBA would treat these two provisions differently, which is what Petitioner is functionally advocating.

SBA, however, does not treat these provisions differently. The plain language of the affiliation waiver in the CARES Act, as well as the IFRs and subregulatory guidance makes clear that the waiver applies to an entity that "is assigned" a NAICS Code beginning with 72 at the time of the loan disbursement. (15 U.S.C. § 636(a)(36)(D)(iv)(I); *IFR 2*, 85 FED. REG. 20817, 280818 n. 1, FAQs, Q 24). Appellant did not have such a NAICS Code at the time of the loan disbursement. On the PPP Loan Forgiveness Application, SBA asked for the borrower's NAICS code as it appears on the borrower's tax return, which SBA takes into consideration when determining whether a borrower was eligible for a PPP loan. (PPP Loan Forgiveness Application Form 3508EZ Revised July 30, 2021; *Loan Forgiveness Procedures IFR*, 86 FED. REG. 8283, 8294(V)(1)(a)). And, in fact, although SBA's Section 7(a) regulations permit SBA to make size and NAICS code determinations (*see, e.g.,* 13 C.F.R. §§ 121.1102, 121.1103), SBA does not permit OHA to review such decisions for PPP purposes: "The Rules of Practice for Appeals From Size Determinations and NAICS Code Designations in subpart C of this part do not apply to appeals of final SBA loan review decisions or to the PPP." (13 C.F.R. § 134.1201(g)).

Taken together, I am not persuaded that the PFR clearly shows an error of fact or law that was material to the Corrected Decision.

## IV. CONCLUSION

For the reasons discussed above, the PFR is DENIED.

SO ORDERED.

*Richard Ambrow*

**RICHARD AMBROW**
U.S. Administrative Law Judge

# EXHIBIT A

# United States Small Business Administration
# Office of Hearings and Appeals

**PAYCHECK PROTECTION PROGRAM APPEAL OF**:

**Horseshoe Bay Resort Holdings, LLC**

    Appellant

Appealed from
SBA PPP Loan No. 3866357206

Issued: May 9, 2023

Decision No. **PPP-3866357206**

James W. Kim, Arnold & Porter Kaye Scholer LLP, on behalf of Appellant.

Michael Blumenthal, on behalf of the U.S. Small Business Administration ("SBA").

## CORRECTED DECISION[1]

### I.    INTRODUCTION AND JURISDICTION

Horseshoe Bay Resort Holdings, LLC ("Appellant") was approved for Paycheck Protection Program Loan no. 3866357206 the amount of $2,370,747.50 (the "PPP Loan"). On January 24, 2023, SBA issued a Final SBA Loan Review Decision (the "*FLRD*") with an SBA final forgiveness amount of $0. On February 23, 2023, Appellant filed an appeal petition with the Office of Hearings and Appeals ("OHA") seeking review of the Final SBA Loan Review Decision.

OHA has jurisdiction to consider this PPP appeal. (*See* 13 C.F.R. §§ 134.102(w); 134.1201).

After carefully considering the evidence and arguments presented, for the reasons stated below, I **AFFIRM** the *FLRD* indicating an SBA final forgiveness amount of $0 for PPP Loan no. 3866357206.

### II.    BACKGROUND

#### A.  Paycheck Protection Program

The Paycheck Protect Program was a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed. PPP was established under section

---

[1] This Correct Decision clarifies a typographical error in the Conclusion, as well as other typographical errors. The substance is unchanged.

1102 of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes.

In general, PPP was open to all American small businesses, including sole proprietorships, independent contractors, and self-employed individuals. (15 U.S.C. § 636(a)(36)(D)). Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent payments, and utilities. (15 U.S.C. § 636(a)(36)(F)).

### B. Appellant's PPP Loan and Application For Forgiveness

Appellant filled out an application for a PPP Loan that is signed and dated April 28, 2020 ("PPP Loan Application"). (Administrative Record ("AR"), pp. 828-32). The PPP Loan Application indicates that Appellant's average monthly payroll was $948,299.00, that the requested loan amount was $2,370,747.50, and that the number of employees was 380. (AR, p. 828).

The PPP Loan was disbursed on April 28, 2020. (AR, p. 1086).

On September 24, 2021, the Appellant submitted a PPP Loan Forgiveness Application Form ("PPP Loan Forgiveness Application") through the lender. (AR, pp. 31-34). Among other things, Appellant identifies its NAICS Code as 713910. (AR, p. 31)

The lender approved of forgiveness in full. (AR, pp. 1, 28).

On April 11, 2022, SBA sent a letter to Appellant's lender requesting information (the "April 11, 2022 Letter"). (AR, pp. 816-20; *see also* AR, pp. 1137-39). The April 11, 2022 Letter identifies eight potential affiliates of Appellant, including, among others, Horseshoe Bay Resort Destinations ("HSBR Destinations"), and sought information about these entities. (*Id.*).

Appellant responded on April 22, 2022, with a letter, answers to SBA Form 3511 and Statements of Operations for 2019 and 2020. (AR, pp. 350-60, 806-13, 1474). In the response letter, Appellant's CFO noted that Appellant uses NAICS Code 713910 for tax purposes, that Appellant operates several restaurants, that 41% of Appellant's employees provide food and beverage services, and agronomy and landscaping employees are 25% of Appellant's employees. (AR, pp. 350-52). Appellant's CFO asserts that considering the dominant employee count, Appellant should be classified under a NAICS Code 72. (AR, p. 352). Appellant's response to SBA Form 3511 indicates that Appellant's NAICS Code is 713910, it has 380 employees, and selects Box A under Section II for "employee-based size standard." (AR, p. 808). It identified that it has an affiliate, HSBR Destinations, with a NAICS Code 721100 and 294 employees. (AR, p. 810). In addition, there is a hand-written note that summarizes Appellant's position that is should be considered NAICS Code 72 based on employee type. (AR, p. 810). Appellant's 2019 Statement of Operations shows total operational revenue of $32,665,891, of which $11,959,098 was from membership dues and fees. Appellant's largest single expense was payroll for food and beverage employees at $2,992,372. (AR, pp. 353-56). The Statement of Operations for 2020 again shows

total operating revenue again to be in excess of $32 million, memberships to be the largest source of revenue, and payroll for food and beverage employees were the highest expense. (AR, pp. 357-60).

On May 13, 2022, SBA sent an additional letter to the Appellant (the "May 13, 2022 Letter"). (AR, pp. 821-25; *see also* AR, pp. 1114-16). SBA identified 23 potential affiliates, including Jetran, LLC ("Jetran") and Spectre Air Capital, LLC ("Spectre"), and sought information about the potential affiliates. (AR, pp. 822-24). SBA sent a follow-up email on May 20, 2022. (AR, pp. 1117-20).

On May 27, 2022, Appellant provided an addition set of responses to SBA. (AR, pp. 123-27, 220-21, 1134-36). Building on Appellant's previous argument – that it should be classified as NAICS Code 72 because the largest number of employees perform food and beverage work – Appellant's CFO noted that food and beverage payroll was the highest among Appellant's departments. (AR, pp. 220-21).

The file has an "Affiliate Narrative Worksheet[.]" (AR, pp. 1639-42). Among other things, the Affiliate Narrative Worksheet indicates that the Appellant is in a family of four affiliated entities along with HSBR Destinations, Jetran and Spectre, each of which received a PPP loan. (AR, pp. 1639-40). Per the Affiliate Narrative Worksheet, all of the affiliated entities are either directly or indirectly at least 50% owned by Jaffe Assets or Jaffe Group, LLC. The four entities together are shown as having 593 employees, with 310 from Appellant, and 241 from HSBR Destinations. (AR, pp. 1639-40).

On June 23, 2022, SBA sent an additional letter to Appellant's Lender indicating that SBA would be unable to complete its review of alternative size standard due to a lack of documentation (the "June 23, 2022 Letter"). (AR, pp. 826-27).

On September 29, 2022, Appellant, through counsel, wrote a response to SBA. (AR, pp. 1142-46). In brief, Appellant argues that it should be considered a NAICS Code 72 entity because its food and beverage sales constitute a large portion of revenue, its most employees, and a substantial portion of the costs. (AR, pp. 1144-45).

The AR contains Appellant's IRS Form 1065 for the period April 1, 2019 through March 31, 2020 ("2019 IRS Form 1065"). (AR, pp. 385-596). The AR also contains Appellant's IRS Form 1065 for the period April 1, 2020 through March 31, 2021 (the "2020 IRS Form 1065"). (AR, pp. 599-776). Both tax returns identify Appellant's business code number as 713900. (AR, pp. 387, 600). Finally, the AR contains a February 10, 2023 letter requesting Appellant's NAICS code to be updated to 721100. (AR, p. 1141).

### C. Final SBA Loan Review Decision

On January 24, 2023, SBA issued the *FLRD*. The *FLRD* states that SBA final forgiveness amount is $0:

> SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows:
>
> After review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards.
>
> It is verified that the borrower selected Employee-Based size standard when making its eligibility certification per the SBA Form 3511 dated April 22, 2022. The borrower and its affiliates have a combined employee count of 593, which exceeds SBA's Employee-Based size standard of 500 employees.
>
> It is verified per page 3 of "Statement of Operations 2019" that gross receipts for the Calendar year of 2019 were $32,665,891. Per page 37 of the internal attachment "Attorney Letter", gross receipts for the fiscal year of April 9, 2019 through March 31, 2020 were $61,079,267. Both of these reported revenues exceed the Receipts-Based size standard of $19,000,000 for NAICS code 713910.
>
> The subject loan was also determined to be ineligible for an affiliation waiver as it does not have a NAICS code beginning with 72. It is noted per page 4 of the internal attachment "Attorney letter" that the largest source of revenue for the Borrower was from Membership rather than Food & Beverage. The documents "Statement of Operations 2019" and "Statement of Operations 2020" further confirm that the majority of revenue was derived from Membership rather than Food & Beverage. Per 13 CFR 121.107 "In determining the primary industry in which a concern or a concern combined with its affiliates is engaged, SBA considers the distribution of receipts, employees and costs of doing business among the different industries in which business operations occurred for the most recently completed fiscal year." Therefore, the SBA concludes that a 72 NAICS code affiliation waiver does not apply in this case.
>
> Additional documentation was requested to evaluate the borrower's eligibility under alternative size standard, such as a completed SBA Form 3511 inclusive of all affiliates and comparable documentation to verify Tangible Net Worth and Average Net Income. The requested documentation was not provided, therefore an evaluation of Alternative Size Standard cannot be completed.

(AR, pp. 28-29).

### D.  Appeal

On February 23, 2023, the Appellant initiated this appeal by filing a letter through the OHA Case Portal.  In the Petition, the Appellant argues in favor of full loan forgiveness.  Appellant's argument will be outlined further below.  But, in a nutshell, Appellant argues that it is entitled to an affiliation waiver under the CARES Act because its business activities should be classified under NAICS Code 72.  Appellant argues that SBA conducted a faulty "primary industry"

analysis by failing to consider Appellant's affiliates, and improperly focusing on Appellant's revenues, instead of Appellant's receipts, employees and cost of good sold.  If Appellant were classified properly as a NAICS Code 72 entity, it would easily qualify as eligible for a PPP loan.

Appellant did not file any Objections to the Administrative Record.[2]

### III.  DISCUSSION

#### A. Standard of Review

I must review the *FLRD* for whether it was based upon a clear error of fact or law.  The Appellant has the burden of proving all elements of the appeal.  (13 C.F.R. § 134.1210).

#### B. Analysis

##### 1. *Applicable Rules*

###### a. Size Standards, Affiliation and Primary Industry

The CARES Act states that the SBA may guarantee covered loans.  (Section 1102(a)(2)(36)(B) of the CARES Act).  The CARES Act also provides that any business concern: "shall be eligible to receive a covered loan" if the business concern "employs not more than the greater of—(I) 500 employees; or (II) if applicable, the size standard in number of employees established by the Administration for the industry" in which the business concern operates.  (Section 1102(a)(2)(36)(D)(i)(I)&(II) of the CARES Act).  During the covered period, "the provisions applicable to affiliations" under 13 C.F.R. § 121.103 "are waived with respect to eligibility for a covered loan" if "any business concern with not more than 500 employees that, as of the date on which the covered loan is disbursed, is assigned a North American Industry Classification System code beginning with 72[.]"  (Section 1102(a)(2)(36)(D)(iv)(I) of the CARES Act).

Although the CARES Act references a waiver of 13 C.F.R. § 121.103, Section 121.103 indicates that for Section 7(a) business loans, such as PPP loans, size standards and bases for affiliation are found in 13 C.F.R. § 121.301.  (13 C.F.R. § 121.103(a)(8)) ("For applicants in SBA's Business Loan, Disaster Loan, and Surety Bond Guarantee Programs, the size standards and bases for affiliation are set forth in § 121.301.").  In turn, 13 C.F.R. § 121.301 provides:

> (a)  For Business Loans (other than for 7(a) Business Loans for the period beginning May 5, 2009 and ending on September 30, 2010) and for Disaster Loans (other than physical disaster loans), an applicant business concern must satisfy two criteria:

---

[2] Appellant filed a copy of a management agreement via the OHA Case Portal, apparently to attempt to facilitate re-review of Appellant's loan.

> (1) The size of the applicant alone (without affiliates) must not exceed the size standard designated for the industry in which the applicant is primarily engaged; and
>
> (2) The size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, which ever is higher. These size standards are set forth in § 121.201. . . .

SBA issued size standards based on a business's NAICS code. Per SBA's size standard for NAICS Code 713910 (Golf Courses and Country Clubs), the maximum annual receipts allowed for a concern to be considered small is $19 million. (13 C.F.R. § 121.201).

### b. PPP Loan Forgiveness

The CARES Act provides that a PPP Loan borrower may have its indebtedness forgiven. (Section 1106(b) of the CARES Act). The SBA may review PPP loans for borrower eligibility, loan amounts and use of proceeds, and loan forgiveness amounts. For loan forgiveness applications submitted after December 27, 2020, SBA had authority regarding borrower eligibility:

> *Borrower Eligibility*: The Administrator may review whether a borrower is eligible for the PPP loan based on the provisions of the CARES Act, the Economic Aid Acts, the rules and guidance available at the time of the borrower's PPP loan application, and the terms of the borrower's loan application. See FAQ 17 (posted April 6, 2020). These include, but are not limited to, SBA's regulations under 13 CFR 120.110 (as modified and clarified by the PPP Interim Final Rules) and 13 CFR 121.301(f) and the information, certifications, and representations on the Borrower Application Form (SBA Form 2483, 2483-SD, or lender's equivalent form) and Loan Forgiveness Application Form (SBA Form 3508, 3508EZ, or lender's equivalent form). . . .

(*Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act* ("*Loan Forgiveness Procedures IFR*"), 86 FED. REG. 8283, 8294(V)(1)(a)).[3]

The CARES Act also limits the amount of forgiveness available. "The amount of loan forgiveness under this section shall not exceed the principal amount of the financing made available under the applicable covered loan." (Section 1106(d) of the CARES Act). "If SBA determines that a borrower is ineligible for the PPP loan, SBA will direct the lender to deny the loan forgiveness application. . . ." (*Loan Forgiveness Procedures IFR*, 86 FED. REG. 8283, 8295(V)(1)(e)).

---

[3] The quoted text cites the following link: https://www.sba.gov/document/support—faqlenders-borrowers (last visited May 4, 2023).

Docket No. PPP-3866357206

2. *Application of Rules to This Case*

Applying these rules to this case, it does not appear that SBA made any clear errors of fact of law in its *FLRD*.

In the *FLRD*, the SBA asserted that Appellant exceeds the maximum allowable size both because it exceeds the employee-based size-standard, as well as receipts-based size standard. (AR, pp. 28-29). Under the CARES Act, a business with its affiliates may not have more than 500 employees. (Section 1102(a)(2)(36)(D)(i)(I)&(II) of the CARES Act; *see also Paycheck Protection Program* ("*IFR #2*"), 85 FED. REG. 20817, 20818(III)(1) ("In most cases, a borrower will be considered together with its affiliates for purposes of determining eligibility for the PPP."[4])). In the *FLRD*, SBA asserts that Appellant and its affiliates have 593 employees. (AR, p. 28). This number is consistent with the Affiliate Narrative Worksheet, which shows that Appellant and its affiliates have 593 employees, of which 551 are employed by either Appellant or HSBR Destinations. (AR, pp. 1639-40). Appellant's response to SBA Form 3511 indicates that Appellant has 380 employees, and that HSBR Destinations has 294 employees, for a total of 674 employees – also in excess of 500. (AR, pp. 1127-29). As for the receipts-base size standard, the maximum annual receipts allowed for NAICS Code 713910 for a concern to be considered small is $19 million. (13 C.F.R. § 121.201). Per the Statements of Operations for 2019 and 2020, Appellant's total operating revenue was in excess of $32 million for each year. (AR, pp. 363, 367). Thus, the *FLRD* is not based on clear error of fact or law to the extent it determines that Appellant exceeded the maximum size standards.

The *FLRD* also indicates that SBA rejected Appellant's claim for a waiver based on NAICS Code 72 because Appellant does not have a NAICS Code that begins with 72. (AR, pp. 28-29). Although not discussed in the *FLRD*, Appellant identified itself on its PPP Loan Forgiveness Application, as well as its tax returns as having a NAICS Code that begins with 71. (AR, pp. 31, 387, 600). Because Appellant self-classified as NAICS Code 71, instead of NAICS Code 72, I do not find that the *FLRD* is based on clear error to the extent that SBA declined to apply the NAICS Code 72 waiver.

Appellant challenges the *FLRD*. In brief, Appellant argues that SBA made a faulty "primary industry" analysis, which led SBA to conclude erroneously that Appellant was not entitled to a NAICS Code 72 waiver. Appellant's argument flows first from the text of 13 C.F.R. § 121.107, which provides that SBA is to consider "distribution of receipts, employees and cost of doing business . . ." when determining the "primary industry" of a concern and its affiliates. Appellant argues that SBA should have considered Appellant "'***and all of its affiliates***'" in conducting a primary industry analysis, and that SBA erred as it considered Appellant without its affiliates. (OHA Case Portal, "Appeal[,]" pp. 8-9) (emphasis in original; citations omitted). Appellant next argues that SBA focused solely on Appellant's revenues, as opposed to Appellant's receipts, employees and costs of doing business when doing its primary industry analysis. (*Id.*, at 10-11). Appellant argues that its receipts, employees and costs of doing business demonstrate that its primary industry falls within the NAICS 72 category. (*Id.*, at 12-14). Appellant's argument highlights that while Appellant and its affiliates are considered together for purposes of

---

[4] *IFR #2* has a footnote describing the statutory exceptions to this general rule.

determining primary industry, a borrower classified under NAICS Code 72 is considered alone, without its affiliates, under a size-analysis based on number of employees. (*Id*. at. 14-16).

Appellant's argument focuses on the NAICS Code that Appellant *should have been* assigned by SBA to Appellant long after the PPP Loan was disbursed. But, the NAICS Code 72 waiver in the CARES Act focuses on the NAICS Code Appellant "is[,]" or was, "assigned" as of the date the loan was disbursed. The CARES Act limits eligibility for a PPP loan to the greater of 500 employees or the size standard established by SBA for the borrower's industry. (Section 1102(a)(2)(36)(D)(i) of the CARES Act). The CARES Act also provides that the affiliation rules applicable under 13 C.F.R. § 121.103 are waived for any business concern with not more than 500 employees that, "as of the date on which the covered loan is disbursed, is assigned a North American Industry Classification System code beginning with 72[.]" (Section 1102(a)(2)(36)(D)(iv) of the CARES Act). In other words, the NAICS Code 72 wavier applies to a business: 1) with not more than 500 employees; 2) that "as of the date on which the covered loan is disbursed"; 3) "is[/was] assigned a [NAICS] code beginning with 72[.]"

Here, the PPP loan was disbursed on April 28, 2020. (AR, p. 1086). As of April 28, 2020, Appellant did not have a NAICS code beginning with 72. Per Appellant's 2019 tax return, Appellant "[was] assigned" NAICS Code 713900. (AR, p. 387). In its SBA Form 3511 response, Appellant acknowledges that its NAICS Code was 713910 (though it advocated that it should have been classified under NAICS Code 72). (AR, pp. 1152-59). Only in February 2023 did Appellant tell the IRS that it was updating its NAICS Code to one beginning with 72. (AR, p. 1141). Accordingly, Appellant has not carried its burden of demonstrating that as of the date the loan was disbursed that it had a NAICS Code beginning with 72.

Consistent with the language of the CARES Act, SBA's PPP rules use the NAICS Code a borrower "assign[ed]" to itself for tax purposes to review a borrower's eligibility. In general, NAICS codes are self-assigned. "NAICS is a Self-Assigned System; no one assigns you a NAICS Code. What this means is a company selects the code that best depicts their primary business activity and then uses it when asked for their code." (*See* What is a NAICS Code and Why do I Need One? | NAICS Association (last visited May 4, 2023). Likewise, the IRS allows taxpayers to assign themselves NAICS codes for tax return purposes. The IRS Form 1065 for both 2019 and 2020 require the taxpayer to fill in its Business Code Number in Box C. The Business Code Number is based on the taxpayer's primary business activity. In turn, the taxpayer's primary business activity is described by NAICS codes selected by the taxpayer. The taxpayer's primary business activity based on the taxpayer's total receipts. (*See 2019 Instructions for Form 1065*,[5] pp. 18, 56-58; *2020 Instructions for Form 1065*,[6] pp. 17, 58-60). Here, as noted, Appellant self-selected NAICS Codes starting with 71 for its 2019 IRS Form 1065, as well as its 2020 IRS Form 1065. (AR, pp. 387, 600).

The PPP uses the borrower's self-assigned NAICS Code from the borrower's tax returns for PPP eligibility purposes. When reviewing whether a borrower is eligible for a PPP loan, SBA review includes the certifications and representations on the borrower's PPP Loan Application Form and

---

[5] 2019 Instructions for Form 1065 (irs.gov) (last visited May 4, 2023).

[6] 2020 Instructions for Form 1065 (irs.gov) (last visited May 4, 2023).

PPP Loan Forgiveness Application. (*Loan Forgiveness Procedures IFR*, 86 FED. REG. 8283, 8294(V)(1)(a)). In particular, Appellant used Form 3508EZ, revised July 30, 2021 for its PPP Loan Forgiveness Application. (AR, pp. 31-34). The instructions for the July 30, 2021 version of Form 3508EZ state that borrowers are to use the NAICS Code from the borrower's tax return:

> **Business Address/NAICS Code/Business Phone/Primary Contact/E-mail Address**: Enter the same information as on your Borrower Application Form, unless there has been a change in address or contact information. *If NAICS Code was not on the Borrower Application Form, match the business activity code provided on IRS income tax filings, if applicable.*

(*See* PPP Loan Forgiveness Application Form 3508EZ Revised July 30, 2021[7]) (emphasis added). In short, the PPP loan forgiveness application form Appellant used incorporate the borrower's NAICS Code from the borrower's tax return, and, in turn, SBA uses the PPP loan application form and PPP loan forgiveness application form to determine PPP eligibility.

I understand and respect Appellant's well-articulated "primary industry" argument based on the text of 13 C.F.R. § 121.107. But, I unfortunately do not find it to be persuasive. The term "primary industry" is used in the Section 7(a) regulations as part of the size determination analysis. For SBA Section 7(a) business loans, including PPP loans, an applicant must satisfy two eligibility criteria. (13 C.F.R. § 121.301(a)). First, the size of an applicant alone must not exceed the size standard designated for the industry in which the applicant is primarily engaged. (13 C.F.R. § 121.301(a)(1)). Second, the size of the applicant combined with its affiliates must not exceed the size standard designated for the either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, whichever is higher. (13 C.F.R. § 121.301(a)(2)). These size standards are set forth in 13 C.F.R. § 121.301. (13 C.F.R. § 121.301(a)(2)). In turn, Section 121.301 identifies applicable size standard by NAICS code. In short, a borrower's "primary industry" is used to give a borrower a NAICS code, which, in turn, is used for determining whether a business meets SBA's size standard. But, as discussed, the CARES Act considers the NAICS Code that a borrower "is assigned" for waiver purposes. And SBA rules consider Appellant's PPP Loan Forgiveness Application – which uses the NAICS Code that Appellant assigned itself – for determining eligibility. Thus, under PPP rules, there is no place for considering what Appellant's "primary industry" should have been.

Because SBA determined that Appellant was ineligible for the PPP Loan, it was required to deny loan forgiveness. "If SBA determines that a borrower is ineligible for the PPP loan, SBA will direct the lender to deny the loan forgiveness application. . . ." (*Loan Forgiveness Procedures IFR*, 86 FED. REG. 8283, 8295(V)(1)(e)).

Finally, I note that in its *FLRD*, SBA appears to have considered Appellant's argument for a waiver by considering various sources of Appellant's revenues. (AR, p. 29). The *FLRD*, however, says: "The subject loan was also determined to be ineligible for an affiliation waiver as it does not have a NAICS code beginning with 72." (AR, p. 29). This is an accurate statement.

---

[7] [PPP Loan Forgiveness Application Form 3508EZ Revised July 30, 2021 (treasury.gov)](#) (last visited May 4, 2023).

Appellant's PPP Loan Forgiveness Application, as well as its 2019 IRS Form 1065 and 2020 IRS Form 1065 all identify Appellant as having a NAICS Code beginning with 71.  Therefore, this is not a basis for finding that the *FLRD* was based on clear error.

## IV.  CONCLUSION

For the reasons discussed above, I AFFIRM the Final SBA Loan Review Decision that the Appellant was eligible for the final forgiveness amount of $0 for PPP Loan no. 3866357206.  The Final SBA Loan Review decision is not based on clear error of fact or law.

                                    **SO ORDERED.**

*Richard Ambrow*
_____
**RICHARD AMBROW**
Administrative Law Judge

Docket No. PPP-3866357206

**NOTICE OF APPEAL RIGHTS AND PROCEDURES**

Either SBA or the Appellant may request reconsideration of an initial decision by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision. 13 C.F.R. § 134.1211(c)(1).  The Judge may also reconsider an initial decision on his or her own initiative within 20 calendar days after service of the initial decision. 13 C.F.R. § 134.1211(c)(2).

A RECONSIDERED INITIAL DECISION becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 C.F.R. § 134.1211(d). 13 C.F.R. § 134.1211(c)(3).

In the event the SBA Administrator elects to review and/or reverse an initial OHA decision and a timely reconsideration request is also filed by Appellant pursuant to 13 C.F.R. § 134.1211(c)(1), the Administrator will consider the reconsideration request. 13 C.F.R. § 134.1211(d).  The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L. 13 C.F.R. § 134.1211(c)(3).  Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision, the SBA Administrator, <u>solely within the Administrator's discretion</u>, may elect to review and/or reverse an initial decision or reconsidered initial decision. 13 C.F.R. § 134.1211(d).