**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| HORSESHOE BAY RESORT | § | |
| HOLDINGS, LLC | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | **Civil Action No. 1:24-CV-00040** |
| | § | |
| THE UNITED STATES SMALL | § | |
| BUSINESS ADMINISTRATION and | § | |
| ISABELLA CASILLAS GUZMAN, | § | |
| in her official capacity as Administrator | § | |
| of the Small Business Administration, | § | |
| | § | |
| **Defendants.** | § | |

## FIRST AMENDED COMPLAINT

Plaintiff Horseshoe Bay Resort Holdings, LLC files this First Amended Complaint against the United States Small Business Administration (the "SBA") and Plaintiff Isabel Casillas Guzman in her official capacity as Administrator of the SBA. In support of the First Amended Complaint, Plaintiff states as follows:

### INTRODUCTION

1. This is an appeal of the SBA's erroneous, arbitrary, and capricious denial of loan forgiveness to Plaintiff under the Paycheck Protection Program (the "PPP").

2. In 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") in order to mitigate the economic devastation and mass unemployment caused by the COVID-19 Pandemic. As part of the CARES Act, Congress created the PPP, which authorized the SBA to guarantee hundreds of billions of dollars in loans to small businesses, and further provided for forgiveness of a PPP loan if the borrower uses the funds to pay certain expenses, such as payroll, mortgage interest, rent, and utilities.

3.      Plaintiff, a holding company which operates the 4-star Horseshoe Bay Resort (the "Resort"), sought SBA approval for a $2,370,748 PPP loan (the "PPP Loan") as a "small" business under an employee-based size standard. Despite approving Plaintiff's PPP Loan, when Plaintiff sought to have that loan forgiven, the SBA instead issued a decision retroactively revoking Plaintiff's eligibility and denying forgiveness (the "Loan Review Decision").

4.      In making the Loan Review Decision, the SBA misidentified the North America Industry Classification System (NAICS) code number applicable to Plaintiff. The SBA erroneously determined that Plaintiff's NAICS code was 71, wrongly classifying Plaintiff as a large business that is ineligible for a waiver of the SBA's traditional rules requiring loan repayment.

5.      Plaintiff timely appealed the Loan Review Decision to the SBA's Office of Hearing and Appeal ("OHA"). Ignoring the SBA's promulgated regulations which place the responsibility of determining a NAICS code on the SBA, the OHA instead erroneously relied on the NAICS code reported on Plaintiff's tax forms, which incorporate the full scope of activities of Plaintiff and several wholly-owned disregarded entities. Without any further analysis or consideration of the financial analyses provided by Plaintiff, the OHA concluded that Plaintiff's NAICS code was 71.

6.      As a result, the OHA affirmed the Loan Review Decision on May 9, 2023 (the "Corrected Final Decision" and, together with the Loan Review Decision, the "SBA Decisions"), and denied Plaintiff the loan forgiveness to which it is entitled.

7.      Plaintiff now appeals the Corrected Final Decision pursuant to 13 C.F.R. § 134.1201(g), which permits appeal of a final decision to the federal district court.

## PARTIES

8.      Plaintiff is a Texas limited liability company duly organized and authorized to conduct business in the State of Texas. Plaintiff is located at 101 Horseshoe Bay Boulevard, Horseshoe Bay, Texas 78657. Plainitiff is a holding company which operates the Resort located in Horseshoe Bay, Texas.

9.      Defendant ant SBA is an independent federal agency created and authorized under 15 U.S.C. § 633 *et seq.* The SBA administers the PPP under the CARES Act, Pub. L. No. 116- 136, 134 Stat. 281 (2020)

10.     Defendant Isabella Casillas Guzman is the Administrator of the SBA and is named as a defendant only in her official capacity. Because she is the officer with final authority for administering the PPP within the SBA, Administrator Guzman is a proper defendant for causes of action under the Administrative Procedures Act ("APA").  *See* 5 U.S.C. § 702.

## JURISDICTION AND VENUE

11.     This Court has subject-matter jurisdiction of this action under 28 U.S.C. § 1331 because this action arises under the laws of the United States.  This Court also has subject-matter jurisdiction under 5 U.S.C. § 706.

12.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(e) as a substantial part of the events and omissions giving rise to the claim occurred in this District, the property that is the subject of this action is situated in this District, and Plaintiff resides in this District.

## FACTUAL BACKGROUND

**A.    The Paycheck Protection Program**

13.     As noted above, Congress passed the CARES Act to mitigate the economic devastation and mass unemployment caused by COVID-19. Pub. L. No. 116-136, 134 Stat. 281 (2020).

14.     To help accomplish this goal, Congress created the PPP, which authorized the SBA to guarantee hundreds of billions of dollars in loans to small businesses. Specifically, the CARES Act amends Section 7(a) of the Small Business Act, a preexisting statutory scheme that authorizes the SBA to issue loans, and guarantee loans made by private lenders, to qualifying businesses.

15.     Section 1106 of the CARES Act provides that a borrower's indebtedness under a PPP loan will be forgiven to the extent that the borrower uses the funds to pay expenses related to payroll, mortgage interest, rent, and utilities during the eight-week period following the loan's origination.

16.     According to the CARES Act, any SBA regulations pertaining to PPP "borrower eligibility" were to be consistent, "to the maximum extent practicable," with 7(a) loan rules. *See* CARES Act, Pub. L. 116-136, § 1109(d)(2)(B).

17.     In the language of the OHA, "[t]he CARES Act placed the PPP under SBA's existing 7(a) loan program and instructed that PPP loans be made 'under the same terms, conditions, and processes' as other 7(a) loans." *Order Granting Petition for Reconsideration for Westview Financial Services VA LLC*, SBA No. PPP-1033067100 (Jan. 6, 2023) (quoting 15 U.S.C. § 636(a)(36)(B)).

18.     Pursuant to its delegated authority, the SBA issued an interim final rule in April 2020 to implement the PPP. Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811 (Apr. 15, 2020) (the "IFR").

**B.     The Existing 7(a) Loan Program**

19.     Under the existing 7(a) loan program, SBA size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns.  Size standards have been established for types of economic activity, or industry, generally under NAICS.  13 C.F.R. § 121.101(a).

20.     "In determining the primary industry in which a concern <u>or a concern combined with its affiliates</u> is engaged, SBA considers the distribution of receipts, employees[,] and costs of doing business among the different industries in which business operations occurred for the most recently completed fiscal year. SBA may also consider other factors, such as the distribution for patents, contract awards, and assets."  13 C.F.R. § 121.107 (emphasis added).

21.     OHA case law also establishes that "when petitioning a[n] [SBA] determination not related to a procurement that requires a designation of the challenged concern's primary industry, an area office must make that designation by considering the work that accounts for the greatest percentage of the receipts for the challenged concern <u>and all its affiliates</u>, then designate one six-digit NAICS code and corresponding size standard as the concern's primary industry." *McLendon Acres, Inc.*, SBA No. SIZ-5222 (Mar. 25, 2011) (emphasis added); *see also Group O, Inc.*, SBA No. SIZ-4441 (June 28, 2001); *Sargent Pipe Company, Inc.*, SBA No. SIZ-4441, at 5 (2001); *Compton Irrigation Inc.*, SBA No. SIZ-2408, at 6 (1986).

22.    SBA's promulgated regulations place the responsibility of determining a NAICS code for a 7(a) loan program applicant within its own authority—considering the "totality of the circumstances"—in accordance with 13 C.F.R. §§ 121.107 and 121.106(a).

23.    While SBA is permitted to use federal tax returns, such as those submitted to the IRS, as informative in its NAICS determination, federal tax returns alone are not dispositive. Put even more clearly, SBA must consider the "totality of the circumstances, *including* criteria used by the IRS for Federal income tax purposes." *See, e.g.*, 13 C.F.R. § 121.106(a).

24.    There is no clear precedent that a borrower's own designation of its NAICS code should outweigh careful analysis by SBA; on the contrary, SBA regularly overrules a borrower's own NAICS code determinations, and there is an appeal process codified in 13 C.F.R. §§ 121.402; 121.1102.

### C.    PPP Loan Eligibility Requirements

25.    The SBA repeatedly cited to existing 7(a) loan requirements in defining eligibility criteria for PPP loan applicants.  For example, SBA made clear in the IFR that "[b]usinesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in [SOP] 50 10, Subpart B, Chapter 2."  IFR at 20812.  13 CFR 120.11 refers to businesses that are ineligible for 7(a) loans, and SOP 50 10, Subpart B refers to "SECTION 7(A) BUSINESS LOAN PROGRAMS."

26.    Through the CARES Act and PPP, Congress intended to "[i]ncrease[] eligibility for certain small businesses and organizations."  15 U.S.C. § 636(a)(36)(D).  In furtherance of this intention, Congress declared that "any business concern that employs not more than 500 employees per physical location of the business concern and that is assigned a [NAICS] code

beginning with 72 at the time of disbursal shall be eligible to receive a covered loan." 15 U.S.C. § 636(a)(36)(D)(iii)(I) (emphasis added).

27. Moreover, Congress expressly waived application of SBA's affiliation rules "with respect to eligibility for a covered loan." 15 U.S.C. § 636(a)(36)(D)(iv) (the "Affiliation Waiver"). Under the NAICS 72 Affiliation Waiver, the only employees counted for the size standard analysis are those that the borrower employs at the single location.

28. In other words, SBA's rules traditionally consider a business concern eligible to participate in SBA 7(a) loan programs when the total number of (i) its employees, and (ii) all its affiliates' employees do not exceed the employee-based size standard. However, Congress's express waiver of this rule means that it intended that PPP loan eligibility be determined without regard to the employees of a concern's affiliates as part of the employee-based size determination.

29. The CARES Act did *not* waive the consideration of affiliates for purposes of determining a borrower's primary industry under 13 C.F.R. § 120.107. It only waived consideration of affiliates for determining eligibility for PPP loan forgiveness based on an employee size standard. 15 U.S.C. § 636(a)(36)(D)(iv). This means that while affiliation is relevant for NAICS classification, once a concern is classified as a NAICS 72 entity, the eligibility determination is made without regard to the concern's affiliates' employee count.

**D.    Horseshoe Bay Resort – Background and PPP Loan**

30. As noted above, Plaintiff is a holding company used to operate the Resort in Horseshoe Bay, Texas.

31. Plaintiff wholly owns several other entities that independently operate various aspects of the resort, such as the golf course, spa, restaurants, bars, and club memberships.

32.     Among Plaintiff's wholly-owned entities is Horseshoe Bay Resort Destinations, LLC ("Destinations"), which has a NAICS code of 721110 (Hotels, Resort Hotels, and Motels). This LLC therefore qualified for a NAICS 72 waiver of the affiliation rules under the SBA PPP and received full forgiveness of its $2,748,400 PPP loan in early 2021.

33.     Plaintiff's role in operation of the Resort focuses on the Club at Horseshoe Bay ("the Club"), a private membership club that makes up only part of the overall Resort, which is not member-exclusive. The Club alone operates four different dining facilities as well as refreshment carts.

34.     Indeed, food and beverage employees/associates comprise 41 percent, the largest single category, of Plaintiff's total employees. The second largest category of employees is Agronomy and Landscaping, which makes up 25 percent of Plaintiff's total employees.

35.     Plaintiff lists several of its wholly-owned entities on its IRS Form 1065 for tax purposes. Specifically, Plaintiff along with Destinations; Horseshoe Bay Resort Interests, LLC; and Horseshoe Bay Resort Realty, LLC file a single tax return Form 1065 under Plaintiff's name.

36.     Plaintiff, an organization that included within its tax return the information of multiple disregarded entities, did not analyze the full scope of activities of the affiliated group when it identified the NAICS code for the organization.  Since the Federal Form 1065 was filed under Plaintiff's LLC identity, Plaintiff chose a code describing what was unique in its individual operations, which was its membership and owner of the Golf Operations.  Plaintiff, which consists of multiple entities with a common ownership of Jaffe Assets LLC at 75.1 % and a minority partner at 24.9%, had never used the NAICS code for any business purpose and it was considered as information only.

37.     As a result, in its 2019 tax filings, Plaintiff identified itself as a NAICS code 713910 (Golf Courses and Country Clubs) business, which is one of the two major business activities that fall within Plaintiff's business through multiple affiliated disregarded entities, which include restaurant and food sales—a business activity falling under the NAICS 72 category

### E.     Plaintiff's PPP Loan and SBA Review

38.     Plaintiff applied for a PPP Loan in the amount of $2,370,748 under an employee-based size standard.  The reference number for Plaintiff's PPP Loan is 3866357206.

39.     The SBA approved Plaintiff's request for a PPP loan on April 27, 2020.

40.     On January 20, 2021, Plaintiff submitted to the SBA a PPP loan forgiveness application.

41.     On April 19, 2022, Plaintiff completed SBA Form 3511, the Paycheck Protection Program Affiliation Worksheet.  SBA Form 3511 lists Plaintiff's affiliated entities with a brief description of their respective function with regard to the Resort.

42.     On May 27, 2022, Plaintiff's lender, BancorpSouth Bank ("Bancorp"), informed Plaintiff that:

> The request was assessed by a managerial review team and it was determined that [Plaintiff] is not eligible for an affiliation waiver given the NAICS code of 713910 for Golf Resorts and Country Clubs accurately defines the [Plaintiff's] primary business. The focus of the affiliation Review moving forward will be based on the data provided on completed 3511.

Bancorp later provided Plaintiff with SBA's subsequent request for documents, dated June 23, 2022, which stated that:

> Due to the lack of documentation, a review of alternative size standards and eligibility information is not possible.  The borrower did not provide the standard SBA 3511 and did not complete Section III Part C or comparable documentation and without the Tangible Net Worth and Average Net Income the Alternative Size Standard cannot be evaluated.

43.    On September 8, 2022, counsel for Plaintiff responded to SBA explaining why Plaintiff should properly be classified as a NAICS 72 entity and therefore eligible for affiliation waiver.  Specifically, Plaintiff asserted that "the review conducted by the SBA managerial review team does not accurately capture the applicable NAICS code attributable to [Plaintiff]" and cited record evidence suggesting Plaintiff is more appropriately categorized by a NAICS 72 code.

**F.    SBA Loan Review Decision**

44.    In the SBA's Loan Review Decision dated January 24, 2023, the SBA denied Plaintiff's request for forgiveness of its PPP Loan.

45.    The decision was based on the SBA's incorrect determination that "[t]he subject loan was . . . ineligible for an affiliation waiver as it does not have a NAICS code beginning with 72."

46.    Having determined that Plaintiff was not eligible for the Affiliation Waiver, the SBA concluded that "[Plaintiff] and its affiliates have a combined employee count of 593, which exceeds SBA's Employee-Based size standard of 500 employees."  As a result, the SBA determined that Plaintiff was "ineligible for the PPP loan" because "the [Plaintiff] business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards."

47.    SBA's determination that Plaintiff was ineligible for the Affiliate Waiver, its PPP loan, and, ultimately, forgiveness of the PPP Loan was arbitrary, capricious, and not in accordance with law as it contravened the CARES Act, the plain language of the IFR implementing the PPP, and the plain language of SBA's own regulations.  SBA's decision was also inconsistent with the clear intent of Congress to make funds widely available to struggling American businesses in the wake of the COVID-19 pandemic.

48.     The SBA first erred by considering Plaintiff without its affiliates for purposes of the primary industry analysis.  *See* 13 C.F.R. § 121.107 (primary industry analysis is based on a concern together with its affiliates).  The Loan Review Decision states that "the largest source of revenue for [the Plaintiff] was from Membership rather than Food & Beverage" and cited to other documents Plaintiff provided in its assessment that "the majority of revenue was derived from Membership rather than Food & Beverage."  These statements make no mention of Plaintiff's affiliates, nor do they consider the factors that determine those affiliates' primary industry, which is broader than merely revenue sources.

49.     By considering Plaintiff in isolation, SBA determined that its primary operation involves membership rather than food and beverage—but that determination is inconsistent with the overall picture which, by regulation, necessarily must include Plaintiff's affiliates.

50.     SBA's Loan Review Decision was also deficient as it (mis)applied only one of the factors its own regulations state are relevant to the primary industry analysis and ignored the remaining two. 13 C.F.R. § 121.107.

51.     SBA cited as conclusive evidence that "the largest source of revenue" for Plaintiff was membership rather than food and beverage.  Revenue is notably *not* one of the factors announced as critical to the primary industry determination.  While revenue may be relevant to the calculation of receipts, other relevant inputs to this calculation include "total income" and "cost of goods sold."  *See* 13 C.F.R. § 121.104(a).

52.     The documents SBA cited as evidence of the membership revenue point to other data points SBA apparently glossed over, such as revenue for other aspects of the Club's operation, like food and beverage, golf operations, spa, marina, and airport, as well as the cost of sales in these respective aspects of The Club.  Moreover, SBA failed to recognize that "membership" at

The Club is, in actuality, inclusive of food and beverage and other amenities that The Club provides.

53.    Had SBA conducted a proper analysis of Plaintiff's primary industry, it would have first determined which concerns are affiliated with Plaintiff, then considered the entire group's receipts, employees, and costs of doing business, and the industry encompassing the largest portion of these three factors combined would suggest Plaintiff's primary industry.  When properly considered—in accordance with the plain regulatory language—jointly with its affiliates, particularly with regard to their collective operation of the Resort, a NAICS 72-category code should be applied to Plaintiff's broader business activity.

54.    Even considering Plaintiff in isolation from its affiliates—which is not proper under 13 C.F.R. § 121.107—Plaintiff's receipts, employees, and costs of doing business demonstrate its primary industry falls within the NAICS 72 (Accommodation and Food Services) category:

a.    Food and beverage accounts for Plaintiff's single largest source of revenue, at 25.8% of Plaintiff's total revenue for 2019, the most recently completed calendar year at the time of its loan disbursement. In contrast, Plaintiff's revenues in the same time period for SBA's assigned NAICS classification (Golf, Tennis, and Recreation), constitute only 20.2% of Plaintiff's total revenue.

b.    Food and beverage personnel comprise the single largest percentage of Plaintiff's employees (excluding its affiliates).   41% of Plaintiff's total employees are dedicated solely to Plaintiff's food and beverage operations.  By comparison, nearly half of the same number, or 21%, of Plaintiff's employees work in Golf Operations and Grounds Maintenance.

c.  Food and beverage expenses are 39.7% of Plaintiff's total operating expenses, while golf expenses are only 35.3% of total operating expenses.  More importantly, when combined with Plaintiff's affiliates—which SBA should have done—food and beverage expenses are 43.9% of the Resort's overall operating expenses, with golf expenses only 19.4%.

55.  Because SBA improperly classified Plaintiff as a NAICS 71 code, Plaintiff was deemed ineligible for the Affiliation Waiver to which it was entitled under the CARES Act.  *See* 15 U.S.C. § 636(a)(36)(D)(iv) (waiving application of SBA's traditional affiliation rules with respect to eligibility under an employee-based size standard for any business concern with no more than 500 employees at each physical location that is assigned a NAICS code beginning with 72).

56.  As a result, SBA "conclude[d] the [Plaintiff] business, or together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards," based on its determination that "[Plaintiff] and its affiliates have a combined employee count of 593," exceeding the 500 maximum under the CARES Act.

57.  With the proper NAICS 72 designation, Plaintiff would have been eligible for a NAICS 72 affiliation waiver and determined eligible for its PPP Loan because it employed fewer than 300 individuals during the relevant time period, well under the 500 employee maximum size standard under the CARES Act.

**G.    The "Corrected" Final Decision and Reconsideration**

58.  Plaintiff timely appealed the Loan Review Decision to the OHA on February 23, 2023, arguing that "[t]hrough a legally and factually flawed analysis, the SBA incorrectly determined that [Plaintiff] was not a NAICS 72 company and thus was an ineligible recipient of PPP loan funds and, in turn, ineligible for forgiveness of the PPP Loan."

59.     OHA issued a final decision on May 8, 2023 affirming the SBA's Loan Review Decision, as well as a Corrected Final Decision on May 9, 2023, "clarify[ing] a typographical error in the Conclusion, as well as other typographical errors," while the substance of the decision remained unchanged.

60.     The OHA's Corrected Final Decision affirming the Loan Review Decision was arbitrary, capricious, and not in accordance with law, as it contravened the plain language of the CARES Act, the IFR implementing the PPP Loan program, and SBA's own regulations by failing to apply loan application requirements for 7(a) loans.  Specifically, the OHA erred by affirming SBA's misapplication of the Regulatory factors determining Plaintiff's designation as a NAICS code 71390 (Golf Courses and Country Clubs).

61.     Unlike the SBA's Loan Review Decision, which at least attempted to conduct some level of analysis under the regulatory factors, the OHA's Corrected Final Decision failed to conduct any analysis at all.

62.     Instead, based on the fact that "[Plaintiff] identified itself on its PPP Loan Forgiveness Application, as well as its tax returns as having a NAICS Code that begins with 71," the OHA erroneously concluded that "[b]ecause [Plaintiff] self-classified as NAICS Code 71, instead of NAICS Code 72, I do not find that the [Loan Review Decision] is based on clear error as to the extent that SBA declined to apply the NAICS Code 72 waiver."  Corrected Final Decision at 7.  Selection of NAICS code for tax return purposes discussed *supra* at ¶ 36.

63.     As discussed above, SBA's promulgated regulations place the responsibility of determining a NAICS code solely on the SBA's own authority, and no part of the CARES Act specifies reliance on a borrower's self-classification or the IRS's records for this purpose.

64.    Nevertheless, the OHA erroneously concluded without reference to guidance from the CARES Act that "[t]he PPP uses the borrower's self-assigned NAICS Code from the borrower's tax returns for PPP eligibility purposes," and on this basis, concluded that SBA is permitted to *ignore its own promulgated regulations relating to 7(a) loan qualification*, providing:

> The CARES Act considers the NAICS Code that a borrower "is assigned" for waiver purposes. And SBA rules consider [Plaintiff's] PPP Loan Forgiveness Application—which uses the NAICS Code that [Plaintiff] assigned itself—for determining eligibility. Thus, under PPP rules—even though [Plaintiff] has previously proven it should classify as a NAICS-72 business under the "primary industry" analysis—there is no place for considering what [Plaintiff's] "primary industry" should have been.

Corrected Final Decision at 8.

65.    The Corrected Final Decision goes on to state that "[i]n short, the PPP loan forgiveness application form [Plaintiff] used incorporate the [Plaintiff's] NAICS Code from the [Plaintiff's] tax return, and, in turn, SBA uses the PPP loan application form and PPP loan forgiveness application form to determine PPP eligibility." Corrected Final Decision at 9.

66.    OHA's circular logic seems to provide that the SBA, by using instructions on a form, somehow overruled long-standing regulatory requirements related to the determination of NAICS code assignment to 7(a) loan borrowers.

67.    Despite the CARES Act statement requiring the SBA to apply 7(a) "terms, conditions, and processes," and the fact that there is no other explicit statement in the CARES Act or official guidance from the SBA prescribing the use of IRS records *as the sole source of evidence regarding NIACS assignment*, the Corrected Final Decision appears to conclude that using the phrase "is assigned" somehow directly modifies existing SBA regulations relating to 7(a) loan qualification, and thus, any entity that *self-certified* on its IRS tax forms that it was a NAICS 72 entity is qualified for the Affiliation Waiver.

15

68.     This conclusion is clearly erroneous as the OHA's proposed analysis does not take into account organizations that have changed business lines, for example, or those like Plaintiff who, due to tax reasons, are reported in the form of consolidated tax returns where the NAICS code reported is commonly not reflective of the individual entity's actual business.

69.     The OHA also failed to consider evidence that a NAICS 72 code was the proper classification of Plaintiff's business activities *at the time of the PPP Loan application.* Plaintiff's tax advisor, BDO, wrote to the IRS on February 10, 2023, requesting that Plaintiff's NAICS code be updated to 721100, indicating that Plaintiff "reviewed its revenue stream, employee costs, other costs of doing business and employee counts and determined that these activities are better reflective of a NAICS code 7121100.

70.     Plaintiff timely submitted a Petition for Reconsideration from Corrected Final Decision on May 18, 2023, which OHA denied on June 16, 2023.

## COUNT I

### Agency Action Not In Accordance With Law (5 U.S.C. § 706(2)(A))

71.     Plaintiff incorporates the preceding allegations as if set forth fully herein.

72.     The APA authorizes judicial review of federal agency actions. 5 U.S.C. § 702.

73.     The reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law." 5 U.S.C. § 706(2)(A).

74.     The OHA's Corrected Final Decision affirming the SBA's denial of forgiveness of Plaintiff's PPP Loan was not in accordance with law, including the CARES Act, the APA, the IFR, and SBA's regulations, including because the OHA:

      a.  Ignored its own promulgated regulations relating to 7(a) loan qualification;

  b. Erroneously concluded that the SBA could rely exclusively on Plaintiff's self-assigned NAICS Code from its tax returns for PPP eligibility purposes;

  c. Ignored Congress's clear direction that "the same terms, conditions, processes" are applicable to PPP loans as existing SBA 7(a) loans;

  d. Did not apply the factors relevant to the primary industry analysis; e. Incorrectly classified Plaintiff as a NAICS 71 entity;

  f. Incorrectly determined Plaintiff was not eligible for the Affiliation Waiver;

  g. Incorrectly included Plaintiff's affiliates when determining that Plaintiff exceeded the 500 employee size standard; and

  h. Incorrectly determined Plaintiff was ineligible for a PPP Loan.

75. As a result, Plaintiff is entitled to an order declaring that the SBA Decisions were not in accordance with law and setting aside or vacating the SBA Decisions.

76. In the alternative, Plaintiff is entitled to an order declaring that the OHA's reliance on Plaintiff's tax returns in the Corrected Final Decision was not in accordance with law, setting aside or vacating the Corrected Final Decision, and remanding the matter to OHA to review SBA's primary industry analysis in accordance with SBA's Promulgated Regulations.

## COUNT II

### Arbitrary and Capricious Agency Action (5 U.S.C. § 706(2)(A))

77. Plaintiff incorporates the preceding allegations as if set forth fully herein.

78. The APA authorizes judicial review of federal agency actions. 5 U.S.C. § 702.

79. The reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary [or] capricious." 5 U.S.C. § 706(2)(A).

80. The OHA's Corrected Final Decision affirming the SBA's denial of forgiveness of Plaintiff's PPP Loan was not in accordance with law, including the CARES Act, the APA, the IFR, and SBA's regulations, including because the OHA:

    a. Ignored its own promulgated regulations relating to 7(a) loan qualification;

    b. Erroneously concluded that the SBA could rely exclusively on Plaintiff's self-assigned NAICS Code from its tax returns for PPP eligibility purposes;

    c. Ignored Congress's clear direction that "the same terms, conditions, processes" are applicable to PPP loans as existing SBA 7(a) loans;

    d. Did not apply the factors relevant to the primary industry analysis; e. Incorrectly classified Plaintiff as a NAICS 71 entity;

    f. Incorrectly determined Plaintiff was not eligible for the Affiliation Waiver;

    g. Incorrectly included Plaintiff's affiliates when determining that Plaintiff exceeded the 500 employee size standard; and

    h. Incorrectly determined Plaintiff was ineligible for a PPP Loan.

81. As a result, Plaintiff is entitled to an order declaring that the SBA Decisions were arbitrary and capricious and setting aside or vacating the SBA Decisions.

82. In the alternative, Plaintiff is entitled to an order declaring that the OHA's reliance on Plaintiff's tax returns in the Corrected Final Decision was arbitrary and capricious, setting aside or vacating the Corrected Final Decision, and remanding the matter to OHA to review SBA's primary industry analysis in accordance with SBA's Promulgated Regulations.

**COUNT II**

**Declaratory Judgment (28 U.S.C. § 2201)**

83.    Plaintiff incorporates the preceding allegations as if set forth fully herein.

84.    For the reasons asserted herein, Plaintiff should properly be classified as a NAICS 72 entity eligible for the Affiliation Waiver and therefore forgiveness of its PPP Loan.

85.    The SBA has refused to apply the correct NAICS 72 classification to Plaintiff and, as a result, denied Plaintiff's eligibility for the Affiliation Waiver and forgiveness of its PPP Loan.

86.    A declaratory judgment from this Court that Plaintiff should be properly be classified as a NAICS 72 entity and eligible for the Affiliation Waiver will resolve this actual controversy.

87.    Plaintiff requests that the Court enter a declaratory judgment pursuant to 28 U.S.C. § 2201, declaring that:

a.    Plaintiff is eligible for loan forgiveness under the CARES Act; b.
    Plaintiff should properly be classified as a NAICS 72 entity;

c.    Plaintiff is eligible for the Affiliation Waiver under the Cares Act;

d.    Plaintiff was eligible to receive its PPP Loan;

e.    The SBA's attempt to deny loan forgiveness to Plaintiff is an impermissible application of the law, contrary to the CARES Act; and

**REQUESTS FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

1.    An order declaring that the SBA Decisions were contrary to law and setting aside or vacating the SBA Decisions;

2.      An order declaring that the Corrected Final Decision was contrary to law, setting aside or vacating the Corrected Final Decision, and remanding the matter to OHA to review SBA's primary industry analysis in accordance with SBA's Promulgated Regulations;

3.      An order declaring that the SBA Decisions were arbitrary and capricious and setting aside or vacating the SBA Decisions;

4.      An order declaring that the Corrected Final Decision was contrary to law, setting aside or vacating the Corrected Final Decision, and remanding the matter to OHA to review SBA's primary industry analysis in accordance with SBA's Promulgated Regulations;

5.      An order declaring that:

a.      Plaintiff is eligible for loan forgiveness under the CARES Act; b. Plaintiff should properly be classified as a NAICS 72 entity;

c.      Plaintiff is eligible for the Affiliation Waiver under the Cares Act;

d.      Plaintiff was eligible to receive its PPP Loan; and

e.      The SBA's attempt to deny loan forgiveness to Plaintiff is an impermissible application of the law, contrary to the CARES Act; and

6.      Such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Leane K. Capps
Leane K. Capps
State Bar No. 00796301

POLSINELLI
2950 N. Harwood Street
Suite 2100
Dallas, Texas 75201
lcapps@polsinelli.com
Telephone:  (214) 397-0030
Facsimile:  (214) 853-9199

**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2024, I electronically filed the above and foregoing pleading with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Leane K. Capps*
LEANE K. CAPPS