UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| HORSESHOE BAY RESORT HOLDINGS, LLC<br><br>   Plaintiff<br><br>   v.<br><br>THE UNITED STATES SMALL BUSINESS ADMINISTRATION, e*t al.,*<br><br>   Defendants. | No. A:24-CV-00040-DAE |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THE UNITED STATES SMALL BUSINESS ADMINISTRATION ("SBA"), ISABEL CASILLAS GUZMAN ("the Administrator") and the UNITED STATES OF AMERICA ("the United States") (collectively "Defendants") move for summary judgment on Plaintiff's First Amended Complaint ("the Complaint") pursuant to Fed. R. Civ. P. 56 as follows:

### BACKGROUND

This is an Administrative Procedure Act ("APA") and Declaratory Judgment Act ("DJA") case arising out of an SBA Paycheck Protection Program ("PPP")[1] loan to Plaintiff. Plaintiff and its various affiliates own and operate "the 4-star Horseshoe Bay Resort." ECF 21 ¶¶ 3, 30-34.

---

[1] The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") PPP was a temporary SBA program designed to immediately assist certain small businesses during the COVID-19 shutdowns by providing forgivable federally guaranteed loans to help maintain their payrolls. *E.g., Seville Indus., Inc. v. U.S. Small Bus. Admin.,* 2024 WL 697592 at *1-3, No. 6:22-CV-06229 (E.D. Louisiana, February 20, 2024), *see also* SBA First IFR, 85 Fed. Reg. 20811 (effective April 15, 2020). The PPP was implemented under Section 7(a) of the Small Business Act and administered by SBA and its regulations promulgated under the act. *Id.,* 15 U.S.C.§ § 636(a)(36), 636((b)(7), *In re Hidalgo Cnty. Emergency Serv. Found.*, 962 F.3d 838, 840 (5th Cir. 2020); *see also Brothers Petroleum, L.L.C., v United States,* 569 F. Supp 405, 414 (E.D. Louisiana, 2021). The PPP was a loan program, not a grant, and unless eligible for forgiveness, the maker (borrower) is expected to satisfy the debt. *Bruckner Truck Sales, Inc. v Guzman*, 2023 WL 860761 at * 1, 6, No. 2:23-CV-097-Z (N.D. Tex., Amarillo, December 12, 2023) (citing *Springfield Hosp., Inc.. Guzman,* 28 F.4th 403, 423 (2d. Cir. 2022)), *Brothers Petroleum, L.L.C.,* 569 F. Supp. at 414 (internal citations omitted).

Plaintiff received a $2,370,474.50 PPP loan and then sought forgiveness of the loan. *Id.* ¶ 3.[2] SBA denied forgiveness. *Id.* Plaintiff disagrees with SBA's denial, particularly SBA's consideration of Plaintiff's self-assigned North American Industry Classification System ("NAICS") code. *Id.* ¶ 4.

NAICS codes establish the "primary industry" of the borrower and are used in SBA's "size standards" to define whether a business is "small," and thus eligible for a loan. *See* 13 C.F.R. §§ 121.101, 121.201.[3] The NAICS code is important because PPP eligibility depends on the "size" of the applicant combined with its 'affiliates." *See* 13 C.F.R. §§ 121.103(a); 121.301(a). However, the CARES Act waived the "affiliate rules" for PPP loans to certain "small" businesses with not more than 500 employees that were assigned a NAICS code "72"[4] *at the time a covered loan was disbursed.* 15 U.S.C. § 636(a)(36)(D)(iv)(I), *see also* SBA Second IFR 85 Fed. Reg. 20818 (emphasis added). So, a "small" business with a NAICS code beginning with "72" at the time the loan was disbursed would not be combined with its "affiliates" to determine its "size for loan eligbility." *See id.*, *see also* ECF 21 ¶ 4, 55-57.

SBA correctly recognized that Plaintiff is a business whose NAICS code begins with "71"[5] and for this and other reasons denied forgiveness of Plaintiff's loan. *Id.* ¶¶ 4, 44-46. Here, Plaintiff

---

[2] The CARES Act § 1106, as amended, allows "eligible recipients" of PPP loans to obtain forgiveness of their loans, meaning cancellation of their indebtedness, in whole or in part. 15 U.S.C. § 636m(b)-(d).

[3] NAICS codes are self-assigned, meaning nobody else "assigns" a code; the business itself selects the code that best describes its primary business activity and then uses it when asked for their code. The only instances in which a code cannot be fully self-assigned for official purposes is within OSHA, the EPA and DEP, which assign codes based on environmental factors, not revenue. *See What is a NAICS Code and Why do I Need One*?, NAICS Association (last visited December 19, 2024).

[4] NAICS code 72 corresponds to businesses in the Accommodation and Food Service sector. *See Industries at a Glance, Accommodation and Food Services: NAICS 72*, Bureau of Labor Statistics, *available at* https://www.bls.gov/iag/tgs/iag72.htm (last visited Dec. 19, 2024). NAICS codes are revised periodically and the 2017 codes in effect at the time this loan was made (which are the same) can be found at *The United States Census Bureau, North American Industry Classification System, 2017 NAICS*; https://www.census.gov/naics/?58967?yearbck=2017 (last visited January 8, 2025).

[5] NAICS code 71 corresponds to businesses in the Arts, Entertainment, and Recreation sector. *See Industries at a Glance, Arts, Entertainment, and Recreation: NAICS 71, available at* https://www.bls.gov/iag/tgs/iag71.htm (last visited Dec. 19, 2024); *Id.*

now claims that notwithstanding its own self-assigned NAICS code of "71," SBA should have found that Plaintiff's NAICS code was really "72" for purposes of its PPP loan forgiveness. *Id.* ¶¶ 53-57.

SBA's decision was fully affirmed twice at the administrative level by the SBA Office of Hearings and Appeals ("OHA"). *Id.* ¶¶ 58-59, 70. Plaintiff now claims that SBA's decision (and the OHA's) was (1) not in accordance with the law, and (2) arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A). *Id.* ¶¶ 60, 71-82. The Court should grant Defendant's motion and dismiss Plaintiff's claims since there is no genuine issue of fact that SBA acted reasonably, considered the relevant issues, reasonably explained its position, and did not act in an arbitrary or capricious manner.

## SUMMARY JUDGMENT EVIDENCE/ADMINISTRATIVE RECORD

In an APA case, the court's review is limited to the administrative record that existed before the agency at the time of the decision. *National Ass'n for Gun Rights, Inc., v. Garland,* --- F.Supp.3d ---, 2024 WL3517504 at *15, No. 4:23-cv-00830-O (N.D. Tex., Fort Worth, July 23, 2024) (citations omitted). The parties filed the certified administrative record ("AR") on September 6, 2024. ECF 30, 30-43. All references to the summary judgment evidence are to the AR, by ECF document and page numbers, unless stated otherwise.

## UNDISPUTED FACTS

The AR establishes the following undisputed facts:

1. On April 28, 2020, Plaintiff, through its lender, applied for a $2,370,474.50 PPP loan. To be eligible Plaintiff was required to certify the number of its employees and any other businesses that it owned or shared common management (i.e. "affiliates"). ECF 30-24, pp. 22-26.

2. Plaintiff did not provide a NAICS code with its loan application. *Id.*

3

3. Plaintiff certified to SBA that it had 380 employees and provided a list of its affiliates. *Id*., pp. 22, 24. The list did not include Plaintiff's wholly owned affiliate "Horseshoe Bay Resort Destinations, L.L.C." ("HB Destinations"). *Id*. pg. 24.

4. Based on the information Plaintiff provided, the lender immediately approved Plaintiff's application and the loan was disbursed the same day on April 28, 2020. ECF 30-30, pg. 47.[6]

5. On December 15, 2020 Plaintiff certified to the IRS that its NAICS code was "71900" in its 2019 tax return.[7] ECF 30-11, pg. 30.

6. On September 24, 2021, Plaintiff, through its lender, applied to SBA for forgiveness of the loan and certified to SBA that its NAICS code was "713910" and that it had only 237 employees at the time of its loan application. ECF 30-3. pp. 73-75.[8]

7. On December 14, 2021 Plaintiff again certified to the IRS that its NAICS code was "71900" in its 2020 tax return.[9] ECF 30-16, pg. 35.

8. Plaintiff's self-assigned NAICS code was "71" at the time the loan was disbursed, as Plaintiff certified to both the IRS and SBA. ECF 30-11, 30-3, 30-16.

---

[6] Since the intent was to disburse PPP funds as quickly as possible, eligibility for PPP loans relaxed several 7(a) origination/underwriting requirements and was heavily dependent on self-certification by the borrower. *See* SBA First IFR, 85 Fed. Reg. 20811, ¶ 1. For example, Congress directed SBA to allow additional qualified lenders, who were not already accredited Section 7(a) lenders to participate in the PPP and mandated they be given "delegated authority" to make and approve PPP loans without prior SBA review. 15 U.S.C. § 636(a)(36)(F)(ii)(I).

[7] Plaintiff's 2019 tax year began on April 1, 2019 and ended on March 31, 2020. Ex. 30-11, pg. 30. The U.S. Bureau of Labor Statistics website lists NAICS code 71900 as "Other Amusement and Recreation Industries." *See United States Department of Labor, U.S. Bureau of Labor Statistics*, *Industries at a Glance, Data Tools* (https://www.bls.gov/oes/2023/may/naics4_713900.htm) (last visited December 19, 2024).

[8] Because Plaintiff did not disclose its NAICS code in its loan application, Plaintiff was required to use their tax return NAICS code in their loan forgiveness application. *See* PPP Loan Forgiveness Application Form 3508EZ and Instructions, Rev. July 30, 2021 (https://www.sba.gov/document/sba-form-3508ez-ppp-ez-loan-forgiveness-application-instructions) (last visited December 17, 2024). NAICS code 713910 is for the primary industry of "Golf Courses and Country Clubs." *See NAICS Code Description*, NAICS Association, *available at* naics.com/naics-code-description (last visited December 19, 2024).

[9] Plaintiff's 2020 tax year began on April 1, 2020 and ended on March 31, 2021. Ex. 30-16, pg. 35.

9. On April 11, 2022, SBA notified Plaintiff, through its lender, that it had identified eight (8) possible affiliates of Plaintiff and requested information on them, including HB Destinations. ECF 30-24, pp. 10-14.

10. On April 22, 2022, Plaintiff submitted its Form 3511 Affiliation Worksheet that disclosed HB Destinations for the first time. ECF 30-2, pp. 47-53, ECF 30-3, pp. 1-2. Plaintiff sought forgiveness based on an "employee size" standard and certified to SBA that it did not have a NAICS code 72, and again certified that its NAICS code was "713910." *Id.*, Part B, Sections I-III. Plaintiff further certified that it had 380 employees and its affiliate HB Destinations had 294 employees. *Id.* Sections III, IV. Plaintiff further certified that HB Destinations had a NAICS code of 72110[10] .*Id.*

11. Plaintiff, together with its wholly owned affiliate HB Destinations, had more than 500 employees. *Id.*

12. Based on a September 9, 2022 letter from Plaintiff's attorney, and Plaintiff's 2019 Consolidating Statement of Operations, Plaintiff's largest source of revenue was Membership Dues and Fees, and its largest Departmental Payroll and "Departmental Other Expenses" was Golf. ECF 30-3, pp. 21, 24.

13. Based on Plaintiff's Statement of Operations 2019 and Statement of Operations 2020, the majority of Plaintiff's revenue was from Membership. ECF 30-3, pg. 30, ECF 30-10, pp. 23, 27.

14. Based on Plaintiff's 2019 Statement of Operation Revenue, the majority of Plaintiff's aggregated revenue, operating expenses and payroll was comprised of non-NAICS 72 operations. ECF 30-42, pp. 66, 69.

---

[10] NAICS code 72110 is for the primary industry of "Hotels (except Casino Hotels) and Motels". ." *See NAICS Code Description*, NAICS Association, *available at* naics.com/naics-code-description (last visited December 19, 2024). **Ironically**, the NAICS website currently lists HB Destinations as one of the top businesses by annual sales for… NAICS code 713910 "Golf Courses and Country Clubs," along with the PGA Tour, among others. *Id.*

5

15. On January 24, 2023 SBA issued its Final Loan Review Decision ("FLRD") holding that Plaintiff was ineligible to receive a PPP loan and denied forgiveness . ECF 30-2, pp. 38-40.[11] As SBA explained, Plaintiff: 1) had too many employees (over 500) to be eligible under a size-based standard, 2) made too much money to be eligible under a receipts-based standard, 3) did not have a NAICS code of "72" and thus the affiliation waiver did not apply, even considering SBA's analysis of the financial information provided by Plaintiff, and 4) didn't provide any of the information requested to be considered for eligibility under an alternative size standard. *Id*.

16. On February 10, 2023, only seventeen (17) days after the FLRD and almost three (3) years after the loan was disbursed, Plaintiff wrote to the IRS seeking to change its NAICS code to "72." ECF 30-43, pg. 164.

17. On May 9, 2023, the OHA fully affirmed the FLRD. ECF 30-43, pp. 185-195.

18. On June 16, 2023, the OHA denied Plaintiff's Petition for Reconsideration and again fully affirmed the FLRD. ECF 30-43, pp. 178-183.

## SUMMARY JUDGMENT IS APPROPRIATE IN APA CASES

The Fifth Circuit has "consistently upheld" the use of summary judgment in judicial review of agency decisions. *Girling Health Care, Inc. v. Shalala,* 85 F.3d 211, 214-215 (5th Cir. 1996). "The summary judgement procedure is particularly appropriate in cases in which the court is asked to review or enforce a decision of a federal administrative agency…[T]he administrative agency is the fact finder. Judicial review has the function of determining whether the administrative action is consistent with the law – that and no more." *Id.* (citations omitted).

---

[11] Only an "eligible recipient" may receive forgiveness of a PPP loan 15 U.S.C. § 636m(b). If a borrower is found ineligible, forgiveness can be denied even if the borrower obtained the loan. *Bruckner Truck Sales, Inc.,* 2023 WL 860761 at * 1, 4-5, s*ee also* SBA Loan Forgiveness IFR, 85 Fed. Reg. 33010 (effective June 1, 2020).

When assessing a summary judgment motion in an APA case, the district judge sits as an appellate tribunal, and the entire case on review is a question of law, and only a question of law. *Permian Basin Petroleum Ass'n v. Dept. of the Interior,* 127 F. Supp.3d 700, 706 (W.D. Tex., Midland-Odessa, 2015) (internal citations omitted). The summary judgment motion merely serves as a mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review. *Id.* The agency resolves factual issues to arrive at a decision supported by the administrative record, and the district court applies the APA standard of review to determine, as a matter of law, whether the evidence in the administrative record permitted the decision reached by the agency. *National Ass'n for Gun Rights, Inc.,* 2024 WL3517504 at *14.

**THE STANDARD OF REVIEW IS WHETHER SBA'S DECISION WAS ARBITRARY AND CAPRICIOUS**

The validity of agency action is "judged…by the appropriate standard of review." *Camp v. Pitts,* 411 U.S. 138, 143 (1973) (per curiam). The APA directs that agency actions be "set aside" if they are "arbitrary and capricious," and thus "otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Here, Plaintiff makes the exact same arguments in support of both counts, under the same statute, and they are one and the same. ECF # 21, ¶¶ 74, 80. The standard of review under Section 706(2)(A) is "arbitrary and capricious." *E.g., Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.,* 463 U.S. 29, 41-43 (1983). The party challenging an agency action as arbitrary and capricious bears the burden of proof. *Permian Basin Petroleum Ass'n,* 127 F. Supp.3d at 706.

An agency acts in an arbitrary and capricious manner if it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency

expertise." *State Farm Mut. Auto. Ins.,* 463 U.S. at 43; *Restaurant Law Center v. United States Dept. of Labor,* 115 F.4th 396, 408 (5th Cir. 2024). The scope of review is narrow and the court must not substitute its judgment for that of the agency. *State Farm,* 463 U.S. 29 at 43; *F.C.C. v. Prometheus Radio Project,* 592 U.S. 414, 423 (2021). The arbitrary-and-capricious test is "highly deferential" and gives the court "the least latitude" to invalidate an agency's decision. *Fath v. Texas Dep't of Transp.,* 924 F.3d 132, 136 (5th Cir. 2018) (per curiam) (citations omitted).

Although the court's review is not "toothless," the court only considers the reasoning articulated by the agency itself, and simply ensures that the agency acted within a "zone of reasonableness" and "reasonably considered the relevant issues and reasonably explained the decision." *Data Mktg P'ship, L.P. v. U.S. Dept. of Lab.,* 45 F.4th 846, 855-56 (5th Cir. 2022) (citations omitted). The court does not "ask whether [the agency] decision was the best one possible or even whether it was better than the alternatives". *Dep't of Com. v. New York,* 588 U.S. 752, 777 (2019) (citation omitted). The court "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,* 419 U.S. 281, 286 (1974). If the agency "articulate[s] a satisfactory explanation for its action including a rational connection between the facts and the choice made … the court cannot substitute its judgment or that of the agency." *Huawei Techs. USA, Inc. v. FCC,* 2 F.4th 421, 434 (5th Cir. 2022).

## SUMMARY OF THE DISPUTE

Plaintiff appears to correctly concede, without ever expressly admitting, that without the affiliation waiver Plaintiff was (and still is) ineligible for the PPP loan, and thus ineligible for forgiveness. *See* ECF 21 55-57. Plaintiff does not allege that SBA's regulations are invalid or ambiguous, or that the affiliates identified by SBA are not Plaintiff's affiliates. Plaintiff does not deny they are too "large" with their affiliate(s) and made too much money under a receipts-based eligibility standard. Plaintiff does not deny that a NAICS code "71" business, which Plaintiff

assigned itself, is not eligible for an affiliation waiver. There is no dispute that *when* SBA conducts a primary industry analysis, it does so pursuant to 13 § CFR 121.107.

The limited issue in this case is whether SBA reasonably decided, based on the AR, that Plaintiff was not eligible for the NAICS code 72 affiliate waiver at the time the loan was disbursed. The issue is not whether Plaintiff *was* a NAICS code 72 business when the loan was disbursed. They were not. The issue instead, as framed by Plaintiff, is that they *should have been* a NAICS code 72 business. So, following Plaintiff's reasoning, the Court would have to find that 1) despite Plaintiff self-assigning itself as a NAICS Code "71" business, 2) certifying this fact to the IRS in 2019 and again in 2020 when the loan was disbursed, 3) further certifying this to SBA multiple times when they asked for forgiveness, and then 4) waiting almost three years after the loan was disbursed to try and change its NAICS code with the IRS … that SBA should have disagreed with Plaintiff's multiple certifications and "re-classified" Plaintiff as a NAICS code 72 business retroactively to when the loan was disbursed. In connection with this extraordinary request, Plaintiff does *not* want its affiliates to be considered for loan eligibility, but *does* want them considered for its NAICS classification, and thus in the end…loan eligibility. ECF 21 ¶¶ 29, 48-49, 53, 57. Plaintiff's circuitous reasoning is itself arbitrary and capricious. Plaintiff's argument that SBA could have overruled Plaintiff's self-assigned NAICS code 71, and was therefore required to do so, fails to show any basis for relief under the APA.

## PLAINTIFF'S AUTHORITIES DO NOT APPLY

Several of the authorities cited by Plaintiff are taken out of context and not applicable. For example, Plaintiff cites to 13 C.F.R. § 121.106(a) for the proposition that SBA "must consider the totality of the circumstances" and not just Plaintiff's tax returns in connection with Plaintiff's NAICS code and request for forgiveness. ECF 21 ¶¶ 22-23. First, SBA considered more than just Plaintiff's tax returns and analyzed the financial data submitted by Plaintiff. ECF 30-3, pp. 29-30, ECF 30-42, pp. 64-70. Second, the cited regulation only pertains to how SBA determines a

concern's number of employees. *Id.* It has nothing to do with Plaintiff's self-assigned NAICS code. The affiliation provisions applicable to SBA's business loan programs, including the PPP, are set forth in 13 C.F.R. § 121.301(f) that has no "totality of the circumstances" test.[12] For that matter, Plaintiff doesn't allege that SBA got the number of its employees wrong, just that they shouldn't be counted together. As such, this regulation cited by Plaintiff is not applicable and does not stand for the proposition for which it is cited.

Next, Plaintiff cites to 13 C.F.R. §§ 121.402 and 121.1102 for the proposition that "SBA regularly overrules a borrower's own NAICS code determinations" and the appeal process associated therewith. ECF 21 ¶ 24. This again significantly misses the mark. Section 121.402 addresses when a procuring agency contracting officer designates a NAICS code in a federal government contracting program. 13 C.F.R. § 121.402. This case has nothing to do with government procurement or contracting and the regulation has nothing to do with the PPP loan in question. Further, Section 121.1101 pertains to "[a]ppeals from formal size determinations." 13 C.F.R. § 121.1101. Also, as noted by Administrative Judge Ambrow in the Decision on Petition for Reconsideration, "[t]he Rules of Practice for Appeals From Size Determinations and NAICS Code Designations in subpart C of this part do not apply to appeals of final SBA loan review decisions or to the PPP." ECF 30-43, pg. 183 (citing 13 C.F.R. §1201(g)).

Here, Plaintiff does not allege that it ever made a request for a formal size determination by SBA (it didn't), which is an entirely separate process.[13] Plaintiff merely disagrees with SBA's

---

[12] "For applicants in SBA's Business Loan, Disaster Loan and Surety Bond Guarantee Programs, the size standards and bases for affiliation are set forth in §121.301." 13 C.F.R. §121.103(8).

[13] A concern that submits an application for financial assistance is deemed to have certified that it is "small" under the applicable size standard, but SBA may question that status based on information from any source. 13 C.F.R. § 121.303 (a). The issue of size is initially considered by the individual with final financial assistance authority, but this is *not* a formal size determination. *Id.* § 121.303(c) (emphasis added). If, like here, an applicant has been denied for size ineligibility, the applicant may request a formal size determination, but the formal request must be made to the Government Contracting Area Director serving the area where the applicant's headquarters is located. *Id.* § 121.303(d). Adverse formal size determinations may be appealed to the OHA. *Id.* § 121.1101. A NAICS code designation made by a procuring activity contracting officer may also be appealed to OHA. *Id.* § 121.1102.

loan eligibility decision, which although partly based on size, was not a formal size determination. The regulation cited by Plaintiff has nothing to do with this case, or the proposition for which it is cited. For example, the case of *McClendon Acres, Inc.,* 2011 WL 1661922 at * 1, SBA No. SIZ-5222 (March 5, 2011), cited by Plaintiff, was an appeal from a request for a formal size determination (holding it was error to use two size standards, since there can be only one primary NAICS industry designation).

## PLAINTIFF MISSTATES SECTION 121.107

Plaintiff alleges that SBA was *required* by 13 C.F.R. § 121.107, to consider its affiliates in connection with a primary industry analysis. ECF 21 ¶¶ 48-50. This misses the mark again. The regulation expressly describes a primary industry determination in which a concern, *or* a concern combined with its affiliates is engaged. 13 C.F.R. 121.107 (emphasis added). The regulation is phrased in the disjunctive, not conjunctive. Otherwise the words "of a concern" would be completely superfluous. Instead, the regulation would just say "a concern combined with its affiliates." It does not. In any event, Plaintiff was the only party (concern) that applied for this loan, not its affiliates. ECF 30-24, pp. 22-26. As such, Plaintiff was properly evaluated on its own. ECF 30-2, pp. 38-40, *see also* ECF 30-42, pg. 66 (appeal analysis explaining this concept). This threshold misstatement of section 121.107 underscores the misdirection of Plaintiff's entire case.

Plaintiff also alleges that SBA was wrong to "gloss over" certain data points emphasized by Plaintiff and that "membership" really includes "food and beverage." ECF 21 ¶ 52. This allegation attempts to downplay that Plaintiff's largest source of revenue is from "membership," and to show that Plaintiff is a NAICS code "71" Food and Beverage" business and not a NAICS Code "72" Golf/Country Club" business as self-assigned in Plaintiff's Affiliation Worksheet submitted to SBA. *See supra.* However, the AR shows that in Plaintiff's 2019 Consolidating Statement of Operations submitted to SBA, "Membership Dues" and "Membership Fees" are distinctly separate line items from "Food & Beverage." ECF 30-3, pg. 24.

11

Plaintiff further alleges that both SBA and OHA were wrong to rely "exclusively" on Plaintiff's self-assigned NAICS code from its tax return(s). ECF 21 ¶¶ 62-65, 74(b), 80(b). But, it is clear that the FLRD considered not just Plaintiff's tax return NAICS code, but also the financial data Plaintiff submitted to SBA. ECF 30-2, pp. 38-40. Also, OHA merely concluded the self-assigned tax return was enough evidence to support SBA's decision. ECF 30-43, pg. 191-193. Further, when denying Plaintiff's Petition for Reconsideration, Administrative Law Judge Ambrow correctly analyzed the significance of Plaintiff's tax return NAICS code in the CARES Act PPP scheme, pointing out that placing "great weight" on the tax return NAICS code is consistent with SBA's regulations, and further pointing out the inconsistencies in Plaintiff's argument, noting that tax return NAICS code's defining role in connection with the amount of a Second Draw PPP loans. ECF 30-43, pp. 182-183. OHA has also held, in the case cited by Plaintiff, that under 13 C.F.R. § 121.107 SBA may consider other factors such as the initial designation in the application to SBA, *which carries more weight than a later claim. McClendon Acres, Inc.,* 2011 WL 1661922 at * 4 (emphasis added). The AR is clear that at the time of Plaintiff's initial application, it had a self-assigned NAICS code of 71, and continuing thereafter, despite its later claim to be a NAICS code 72 business.

Plaintiffs cite no authority that under Section 121.107 SBA is required to *disregard* an applicant's self-assigned NAICS code. Plaintiff cites no authority for the proposition that SBA *must* weigh or consider any particular factor over another, when the express language of the regulation states that SBA *may* consider "other factors." 13 C.F.R. § 121.107. Likewise, there is no authority cited for the proposition that Section 121.107 *requires* SBA to take it upon itself to re-assign Plaintiff's NAICS code *retroactively* to when the loan was disbursed[14], when that would

---

[14] Again, to be eligible for an affiliate waiver, Plaintiff must have had a NAICS code of "72" at the time the loan was disbursed, which it did not. *See* pg. 2 *supra.*

12

be directly at odds with Plaintiff's loan application, request for forgiveness and certifications to both SBA and the IRS.

**SBA ACTED REASONABLY, CONSIDERED THE RELVANT ISSUES, REASONABLY EXPLAINED ITS POSITION AND ITS DECISION TO DENY FORGIVENESS WAS NOT ARBITRARY AND CAPRICIOUS**

Although here Plaintiff parses out only one part of the FLRD, before reaching that limited issue, the Court should first consider the FLRD as a whole in connection with the allegation that SBA's decision was "arbitrary and capricious." First, SBA analyzed forgiveness based on size, as requested by Plaintiff in its application for forgiveness. ECF 30-2, PP. 38-39. When that failed, SBA then analyzed possible forgiveness based on receipts, even though Plaintiff sought forgiveness under a size-based standard. *Id.* Stated differently, SBA did not have to consider that issue, but did so for a possible basis for forgiveness. Having failed that, SBA then addressed a possible NAICS code 72 affiliation waiver. *Id.* Failing that, SBA was lastly unable to consider forgiveness under an alternate size-based standard because Plaintiff simply didn't comply with SBA's request for information, a fact that Plaintiff does not dispute here. *Id.* So, the FLRD shows the Plaintiff's request for forgiveness failed on four separate relevant levels, each analyzed and clearly explained by SBA. This is not a "clear error of judgment," nor does it contain any "unexplained inconsistency" that would be a "hallmark" of an arbitrary and capricious change in agency practice. *See Data Mktg P'ship, L.P., v.* 45 F.4th at 855-57.  Nor is SBA;s decision "so implausible" that it cannot be described as a difference in view. *State Farm Mut. Auto. Ins.,* 463 U.S. at 43.

When analyzing a possible NAICS code 72 waiver, SBA did not *assign* any NAICS code to Plaintiff, nor were they *required* to do so. *See supra.* SBA reasonably agreed with Plaintiff own self-assigned NAICS code(s) and multiple certifications to SBA and the IRS. Notwithstanding, SBA went further, at Plaintiff's invitation, and analyzed Plaintiff's own financial data. When doing so, SBA reasonably concluded and explained that Plaintiff's financials did not support a NACIS

13

code 72 affiliate waiver. *Id., see also supra.* Based on the data, SBA reasonably concluded, based on Plaintiff's revenue, that Plaintiff was primarily in the Golf Course/Country Club business, which it most certainly is, and not primarily the Food and Beverage business, even though that is a component of Plaintiff's business (along with an airport and aviation fuel sales). *See supra.* While Plaintiff argues that "revenue" is not a factor under 13 C.F.R. § 121.107, *see* ECF 21, ¶ 51, the court should recognize that a business cannot have "receipts" without "revenue," and the AR shows Plaintiff's largest revenue was "membership," its largest departmental payroll was "golf" and the majority of its aggregated revenue, operating expenses and payroll was comprised of non-NAICS 72 operations. *See supra.*

While Plaintiff's accountants and attorneys may view the data and do the math differently, depending on their purpose, all that is required is for SBA to have acted within a "zone of reasonableness" and "reasonably considered the relevant issues and reasonably explained the decision." *Data Mktg P'ship, L.P.,* 45 F.4th at 855-56. Clearly, SBA did so, and more, in connection with Plaintiff's request for forgiveness. Although Plaintiff complains this wasn't "the best possible decision" based on the AR and their math, that is not the standard. *Dep't of Com.,* 588 U.S. at 777 (2019). Clearly, this is a decision that could have been reasonably reached, and was. Since SBA "articulate[d] a satisfactory explanation for its action including a rational connection between the facts and the choice made … the court cannot substitute its judgment or that of the agency." *Huawei Techs. USA, Inc. v. FCC,* 2 F.4th 421, 434 (5th Cir. 2022). So, even though the 4-star Horseshoe Bay Resort now does not consider itself a Golf/Country Club for purposes of having to repay its taxpayer funded PPP loan, the Court should grant summary judgment, affirm the SBA's FLRD, affirm both OHA rulings in favor of SBA, and dismiss Plaintiff's claims for relief under the APA.

## SHOULD THE COURT FIND A FACT ISSUE, THE REMEDY SHOULD BE REMAND AND LIMITED DECLARATORY RELIEF

Plaintiff has essentially requested two alternative forms of relief: 1) an order setting aside SBA's decision and 2) a declaration stating how SBA was allegedly wrong. ECF 21 , ¶¶ 81-82, 86-87. Both essentially request the same thing; vacatur and remand. The test for vacatur considers 1) the seriousness of deficiencies of action, that is, how likely the agency will be able to justify its decision on remand and 2) the disruptive consequences of vacatur. *Texas v. Biden,* 20 F.4th 928, 1000 (5th Cir. 2021) *reversed on other grounds and remanded*, 597 U.S. 785 (2022). Remand without vacatur is "generally appropriate when there is at least a serious possibility that the agency will be able to substantiate its decision when given an opportunity to do so." *Id.* (citing *Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n,* 989 F.3d 368, 389-90 (5th Cir. 2021)). Courts have recognized that vacatur is an available remedy against SBA under the APA. *See Daco Investments, LLC v. U.S. Small Bus. Admin.*, 2024 WL 750594 at * 5-6, No. 6:22-CV-01444 (W.D. Louisiana, February 22, 2024).

The Fifth Circuit has consistently held the APA does not waive sovereign immunity for claims seeking injunctive relief against SBA and all such claims are "*absolutely prohibited,*" specifically in the context of PPP loan decisions. *In re Hidalgo Cnty. Emergency Serv. Found.*, 962 F. 3d 838, 840 (5th Cir. 2020) (emphasis original) (denial of PPP loan under CARES Act). As such, should the Court find a fact issue, any remedy should be limited to only what is necessary to decide this very narrow dispute; simply 1) any fact issue on whether SBA's decision and analysis was arbitrary and capricious and 2) the limited factual or legal declaration(s) associated with any such fact issue that 3) the Court believes SBA should consider on remand in connection with Plaintiff's request to be a NAICS code "72" business that 4) SBA hasn't already considered, if any. In other words, not to injunctively command a different result, but merely to require that SBA's action be reasonable and reasonably explained, and that SBA act within a zone of

15

reasonableness and reasonably consider the relevant issues. *Data Mktg P'ship, L.P.,* 45 F.4th at 855-56 (5th Cir. 2022).

**WHEREFORE**, Defendants respectfully pray that the Court grant this motion, enter summary judgment in Defendants' favor on all of Plaintiff's claims and grant Defendants such other and further relief to which they may be entitled.

Dated: January 10, 2025           Respectfully submitted,

                                      **Jaime Esparza**
                                      United States Attorney

By:    */s/ Darryl S. Vereen*
         **Darryl S. Vereen**
         Assistant United States Attorney
         Texas Bar No. 00785148
         darryl.vereen@usdoj.gov
         601 NW Loop 410, Suite 600
         San Antonio, Texas 78216-5597
         Tel. (210) 384-7170
         Fax. (210) 384-7358

         Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I certify that on January 10, 2025, I electronically filed this document with the Clerk of Court using the CM/ECF system. The CM/ECF system will send notification to the following CM/ECF participant(s):

Adrienne Frazier, Esq.
2950 N. Harwood Street
Suite 2100
Dallas, Texas 75201
(214) 661-5596
afrazier@polsinelli.com

James W. Kim, Esq.
1401 Eye Street, N.W.
Suite 800
Washington, D.C. 20005
(202) 626-8301
james.kim@polsinelli.com

*/s/ Darryl S. Vereen*
**Darryl S. Vereen**
Assistant United States Attorney