**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **HORSESHOE BAY RESORT HOLDINGS, LLC,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | |
| **THE UNITED STATES SMALL BUSINESS ADMINISTRATION and ISABELLA CASILLAS GUZMAN, in** her official capacity as Administrator of the Small Business Administration, | § § § § § § § | **Civil Action No. 1:24-CV-00040** |
| **Defendants.** | § § § | |

---

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

TO THE HONORABLE JUDGE PITMAN:

Plaintiff Horseshoe Bay Resort Holdings, LLC ("Horseshoe Bay" or "Plaintiff") files this Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (the "Motion"), requesting that the Court enter judgment in favor of Horseshoe Bay on all claims against the United States Small Business Administration ("SBA") and Isabella Casillas Guzman ("Guzman") (collectively, "Defendants"). In support of this Motion, Horseshoe Bay respectfully shows the following:

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................. ii

TABLE OF AUTHORITIES ......................................................................... iii

INTRODUCTION .................................................................................. 1

SUMMARY OF THE CASE .......................................................................... 1

I.      Operative Facts ......................................................................... 1

II.     Procedural History .................................................................... 6

STANDARD OF REVIEW ........................................................................... 7

ARGUMENT ..................................................................................... 7

I.      The SBA-OHA exceeded its statutory authority under the CARES Act when it disregarded Congress's requirement that borrower eligibility for PPP loans be consistent with section 7(a) rules. ........................................................ 8

II.     The SBA-OHA abused its discretion and acted arbitrarily and capriciously when it decided Horseshoe Bay was ineligible for loan forgiveness.................... 12

        A.     The SBA-OHA failed to articulate a sufficient explanation for departing from its prior practice of considering PPP loans under general 7(a) loan rules.................................................................................. 12

        B.     The SBA-OHA arbitrarily relied on the Horseshoe Bay's "self-classification" and ignored all other factors identified in SBA regulations................................................................................ 16

        C.     The SBA conducted a faulty primary-industry analysis in its Initial Decision. ........................................................................... 18

CONCLUSION.................................................................................... 21

**Cases**                                                                                 **Page(s)**

*Am. Stewards of Liberty v. Dep't of the Interior*,
  370 F. Supp. 711 3d (W.D. Tex. 2019) ................................................................. 7

*Amin v. Mayorkas*,
  24 F.4th 383 (5th Cir. 2022) ................................................................................ 7

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
  144 S. Ct. 2440 (2024) ........................................................................................ 11

*Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*,
  45 F.4th 846 (5th Cir. 2022) ................................................................................ 12

*Dep't of Homeland Sec. v. Regents of the Univ. of*,
  140 S. Ct. 1891 (2020) ........................................................................................ 7

*Encino Motorcars, LLC v. Navarro*,
  576 U.S. 211 (2016) ...................................................................... 12, 13, 16

*FCC v. Fox Television Studios, Inc.*,
  556 U.S. 502 (2009) ............................................................................................ 13

*Inhance Techs., L.L.C. v. U.S. EPA*,
  96 F.4th 888 (5th Cir. 2024) ................................................................................ 8

*Kisor v. Wilkie*,
  388 U.S. 558 (2019) ............................................................................................ 21

*Loper Bright Enters. v. Raimondo*,
  144 S. Ct. 2244 (2024) ........................................................................................ 9

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ...................................................................................... 16, 18

*Nat'l Fed'n of Indep. Bus. v. OSHA*,
  595 U.S. 109 (2022) ............................................................................................ 8

*Niz-Chavez v. Garland*,
  593 U.S. 155 (2021) ............................................................................................ 11

*Ohio v. EPA*,
  603 U.S. 279 (2024) .................................................................... 16, 18, 19

*Texas v. Biden*,
  20 F.4th 928 (5th Cir. 2021) ................................................................................ 12

*Wages & White Lions Invs., L.L.C. v. U.S. Food & Drug Admin.*,
   16 F.4th 1130 (5th Cir. 2021) .................................................................. 12

**SBA-OHA Cases**

*Size Appeal of Grp. O, Inc.*,
   SBA No. SIZ-4441 (June 28, 2001) ....................................11, 13, 14, 19

*Size Appeal of McLendon Acres, Inc.*,
   SBA No. SIZ-5222 (Mar. 25, 2011) ........................................................ 13

*Size Appeal of Sargent Pipe Co., Inc.*,
   SBA No. SIZ-2691 (June 16, 1987) ......................................................... 13

**Statutes**

CARES Act, Pub. L. No. 116–136, 134 Stat. 281 ................................... *passim*

5 U.S.C. § 552 ............................................................................................ 16

5 U.S.C. § 702 ................................................................................... 8, 7, 9, 12

15 U.S.C. § 636 ................................................................................... *passim*

26 U.S.C. § 1504 .......................................................................................... 8

**Rules**

Fed. R. Civ. P. 56 ......................................................................................... 7

**Regulations**

13 C.F.R. § 121.101 ............................................................................ 3, 4, 5, 10

13 C.F.R. § 121.103 ................................................................................. 4, 17

13 C.F.R. § 121.107 ............................................................................... *passim*

13 C.F.R. § 121.301 ........................................................................ 4, 10, 17, 19

13 C.F.R. § 121.1101 ................................................................................. 18

13 C.F.R. § 121.1102 ................................................................................. 14

*Business Loan Program Temporary Changes; Paycheck Protection Program*,
   85 Fed. Reg. 20811 (Apr. 15, 2020) ............................................. 13, 14, 15

*Loan Forgiveness Requirements & Loan Review Procedures as Amended by Economic Aid Act*,
   86 Fed. Reg. 8283 (Feb. 3, 2021) ........................................................... 17

## INTRODUCTION

Horseshoe Bay filed its Complaint in this Court on January 1, 2024, seeking judicial review of the SBA's decision to deny Horseshoe Bay loan forgiveness. Horseshoe Bay seeks judicial review for two main reasons. First, the SBA's decision exceeded its statutory authority as a matter of law when it disregarded the CARES Act's requirement for PPP loans to follow the "same terms, conditions, and processes" as other 7(a) loans by conducting a new analysis for PPP loans that contradicted Congress's language. Second, the SBA abused its discretion and acted arbitrarily and capriciously when it disregarded SBA regulations and strayed from the SBA's prior practice—without sufficient explanation—by relying on a "self-classification" on Horseshoe Bay's tax forms rather than following the rules for 7(a) loans. Accordingly, Horseshoe Bay requests the Court enter summary judgment in its favor on all claims and set aside the SBA's decision.

## SUMMARY OF THE CASE

### I.     Operative Facts[1]

**HORSESHOE BAY.** Plaintiff Horseshoe Bay and its affiliates operates a four-star resort in the Texas Hill Country (the "Resort"), offering its visitors a variety of experiences just forty-five minutes outside the state's capitol city.[2] Horseshoe Bay wholly owns several other entities that contribute to the Resort but independently operates aspects such as the golf course, spa, restaurants and bars, and club memberships.[3] Horseshoe Bay's role at the Resort focuses on the Club at Horseshoe Bay (the "Club"), a private membership club that, among other membership services, provides food and beverage services. The Club captures only one portion of the Resort's

---

[1]Horseshoe Bay relies upon, adopts, and incorporates by reference as evidence in support of this Motion the certified Administrative Record filed with the Court on September 6, 2024. References to the record will be cited as "AR at ___" when the document includes a page number in the bottom, right-hand corner from the SBA's review. When the document does not contain a page number from the SBA, Horseshoe Bay identifies the document by name and ECF number.

[2]*See* Am. Compl. ¶ 30.

[3]*Id*. ¶ 31.

activities—the Resort itself is not member-exclusive.[4] The Club alone operates four different dining facilities and refreshment carts.[5] Indeed, food and beverage employees comprise 41% of Horseshoe Bay's total number of employees—the largest single category of employees for Horseshoe Bay.[6]

Plaintiff Horseshoe Bay's wholly owned entities, or affiliates, include Horseshoe Bay Resort Destinations, LLC ("HSBR Destinations"), Horseshoe Bay Resort Interests, LLC ("HSBR Interests"), and Horseshoe Bay Resort Realty, LLC ("HSBR Realty").[7] For tax purposes, Horseshoe Bay lists HSBR Destinations, HSBR Interests, and HSBR Realty on its IRS Form 1065, and all affiliates file a single tax return under Horseshoe Bay's name.[8] The affiliates are thus treated as "disregarded entities," which, as the name implies, are disregarded as separate organizations for federal income tax purposes—they are subject to taxation in Horseshoe Bay's tax return and included in the IRS Form 1065 for that purpose.[9] Form 1065 requires Horseshoe Bay to identify a business code under the North American Industry Classification System ("NAICS"), often referred to as a "NAICS Code."[10] Since Horseshoe Bay filed its Form 1065 under its own name, Horseshoe Bay identified a code that it felt described its operations individually—without its affiliates.[11] The affiliates were disregarded entities, so Horseshoe Bay did not analyze the full scope of its affiliates' activities when identifying a NAICS Code.[12] Thus, when filing its Form 1065 in 2019 and 2020, Horseshoe Bay identified its NAICS Code as 713900 (Other Amusement and Recreation

---

[4]*Id.* ¶ 33.
[5]*Id.*
[6]AR at 352.
[7]Am. Compl. ¶ 32, 35.
[8]*Id.* ¶ 35.
[9]*See id.* ¶ 36.
[10]AR at 387, 600.
[11]Am. Compl. ¶ 36.
[12]*Id.*

Industries).[13] In its SBA Form 3511 response, Horseshoe Bay mistakenly acknowledged that its NAICS Code was 713910. Horseshoe Bay did not use these identified 71-category NAICS Codes for any other business purpose.[14] As provided in the BDO letter supplied by Horseshoe Bay, had Horseshoe Bay considered the full scope of the affiliate activities when identifying a NAICS Code, it would have identified itself as a NAICS 72 entity.[15]

**THE PAYCHECK PROTECTION PROGRAM.** For decades, the SBA has provided financial assistance to small businesses through its flagship 7(a) loan program, named after section 7(a) of the Small Business Act of 1953.[16] Under the 7(a) program, the SBA defines whether a business is a "small business concern" for eligibility purposes using its promulgated size standards.[17] Specific size standards apply to different industries, as categorized by NAICS Codes.[18] SBA regulations lay out specific rules and analyses regarding 7(a) loans and appeals relating to such loans.[19]

In 2020, the wake of COVID-19, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") to mitigate the economic devastation and mass unemployment accompanying the global pandemic.[20] As part of the CARES Act, Congress added the Paycheck Protection Program (the "PPP") to the existing 7(a) program, authorizing the SBA to guarantee hundreds of billions of dollars in loans to small business concerns.[21] The PPP also

---

[13] AR at 387, 600.
[14] Am. Compl. ¶ 36.
[15] BDO Letter, at 1, ECF No. 30-43. BDO indicated that it "reviewed [Horseshoe Bay's] revenue stream, employee costs, other costs of doing business and employee counts and determined that these activities [were] better reflective of a NAICS code 721100." *Id.*
[16] *See* 15 U.S.C. § 636.
[17] 13 C.F.R. § 121.101(a)
[18] *Id.*
[19] *See id.* §§ 121.101–.110 (provisions of general applicability), 121.1001–.1010 (procedures for size protests and requests for size determinations), 121.1101–.1103 (appeals of size determinations and NAICS Code designations).
[20] *See* CARES Act, Pub. L. No. 116–136, 134 Stat. 281.
[21] *Id.* § 1102.

offered loan forgiveness to borrowers, directing the funds toward certain expenses such as payroll, mortgage interest, rent, and utilities.[22]

THE LOAN FORGIVENESS ANALYSIS. A business concern is eligible for a guaranteed PPP loan based on an employee size standard that corresponds to the SBA's existing industry specific size standards.[23] Each industry, classified using the NAICS system, has a maximum number of employees that a concern may have in order to be considered eligible for funding and forgiveness if it employs not more than the greater of: (1) 500 employees; or (2) the SBA's existing industry-specific size standards.[24] 13 C.F.R. § 121.301, as effective in 2021, serves as the specific regulation identifying which size standards the SBA uses for eligibility.

*Before* the CARES Act, the SBA included a business concern's affiliates when counting the total number of employees.[25] During COVID-19, however, Congress *waived* the affiliation rules for PPP eligibility purposes, intending to expand forgiveness to those that otherwise would have been ineligible due to their affiliates.[26] Specifically, the CARES Act excluded affiliates' employees from the SBA's counting for any business concern with "not more than 500 employees" per physical location and "that is assigned a [NAICS] code beginning with 72."[27] The SBA assigns NAICS Codes according to a business concern's primary industry, which is determined by enumerated factors.[28] The primary-industry analysis, unlike the general eligibility determination, includes the business concern's affiliates to accurately characterize the concern's business and, in turn, its primary industry.[29] In sum, according to SBA regulations, the SBA must first classify a

---

[22]*Id.* § 1106(b) (amending 15 U.S.C. § 636).
[23]15 U.S.C. § 636(a)(36)(D)(i).
[24]*Id.*
[25]13 C.F.R. §§ 121.103(a)(6), 121.301(f)(3).
[26]*See* 15 U.S.C. § 636(a)(36)(D) ("Increased Eligibility for Certain Small Businesses and Organizations").
[27]*Id.* § 636(a)(36)(D)(iv).
[28]*See* 13 C.F.R. § 121.101 ("Size standards have been established for types of economic activity, or industry, generally under [NAICS].").
[29]*See id.* § 121.107.

business concern's primary industry, including its affiliates, and assign it a NAICS Code.[30] If the SBA-determined NAICS Code begins in 72, then the SBA ignores affiliates when counting the employees for PPP forgiveness eligibility.[31]

**HORSESHOE BAY'S PPP LOAN.** On or around April 28, 2020, Horseshoe Bay applied for a PPP loan in the amount of $2,370,747.50, which the SBA approved.[32] The loan was disbursed on May 1, 2020.[33] On September 24, 2021, Horseshoe Bay applied for loan forgiveness, submitting SBA Form 3508EZ with a NAICS Code of 713910 because the SBA instructed applicants to use the code listed on their tax returns.[34] Horseshoe Bay's lender approved forgiveness in full.[35] The SBA, however, informed the lender on April 11, 2022, that it was considering fully denying loan forgiveness and requested additional information.[36] Horseshoe Bay responded on April 22, 2022, providing a letter from the Chief Financial Officer ("CFO"), with answers to SBA Form 3511 and Statements of Operations for 2019 and 2020.[37] The CFO explained that Horseshoe Bay simply uses and acknowledges a NAICS Code beginning in 71 for tax purposes because of the IRS designation, but when taking into account that a NAICS Code is based on dominant employee category, the NAICS Code should begin with 72, which covers lodging, accommodations, and

---

[30]*Id.*

[31]15 U.S.C. § 636(a)(36)(D)(iv).

[32]AR at 828–29.

[33]AR at 1.

[34]AR at 31; *see* Corrected Decision, at 9, ECF No. 30-43. There was some confusion regarding whether Horseshoe Bay's NAICS Code for tax purposes was 713900 or 713910. Horseshoe Bay's Chief Financial Officer believed the tax Form 1065 listed NAICS Code 713910 and, thus, used that number on the Form 3508EZ. *See* AR at 351. Regardless of which NAICS Code was used, they both began in 71, which is the primary concern in this case.

[35]AR at 1, 28. Typically, the SBA works with private lenders to provide loans. Horseshoe Bay's lender was BancorpSouth Bank ("Bancorp").

[36]AR at 816–20.

[37]AR at 350–60. In this case, 2019 and 2020 are the relevant years for considering loan forgiveness eligibility.

food service.[38] Additionally, on September 19, 2022, Horseshoe Bay sent another letter to the SBA, fully explaining its primary industry—an analysis that the SBA uses to determine NAICS Codes.[39]

## II.     Procedural History

THE INITIAL DECISION. On January 24, 2023, the SBA denied Horseshoe Bay's application for loan forgiveness (the "Initial Decision").[40] The SBA stated that Horseshoe Bay was ineligible because it, together with its affiliates, exceed the SBA's size standards.[41] Additionally, the SBA believed Horseshoe Bay did not qualify for an affiliation waiver provided to businesses that use a NAICS 72 Code—which would have allowed Horseshoe Bay to meet the size standard—because, under its primary-industry analysis, Horseshoe Bay's NAICS Code was 713910.[42]

THE CORRECTED DECISION. Horseshoe Bay filed a petition for reconsideration, appealing the Initial Decision to the SBA's Office of Hearings and Appeals ("SBA-OHA").[43] The SBA-OHA issued its Corrected Decision on May 9, 2023, affirming the Initial Decision on the ground that there were no clear errors of law or fact.[44] Specifically, the SBA-OHA stated that Horseshoe Bay exceeded the size standards because it was not entitled to an affiliation waiver with a NAICS Code beginning with 71.[45] The SBA-OHA disregarded the primary-industry analysis, but still affirmed because Horseshoe Bay "self-classified" as having a NAICS Code beginning with 71.[46] Horseshoe

---

[38]AR at 350–60.
[39]AR at 1142–46; *see also* 13 C.F.R. § 121.107 (primary-industry analysis). The remainder of Horseshoe Bay and the SBA's communications is summarized in the Corrected Decision.
[40]Initial Decision, at 1–2, ECF No. 30-2.
[41]*Id.* at 1.
[42]*Id.* at 2; *see also* 13 C.F.R. § 121.107 (primary-industry analysis).
[43]Pet. for Recons., at 1, ECF No. 30-43; *see also* Pet. of Appeal from Loan Forgiveness Denial Decision, ECF No. 30-2. For the sake of clarity, Horseshoe Bay refers to the OHA as the "SBA-OHA" because it is necessary, at times, to distinguish between the SBA, as a whole, and the OHA, as an internal branch of the SBA.
[44]Corrected Decision, at 1, 10, ECF No. 30-43.
[45]*Id.* at 9.
[46]*Id.*

Bay filed a petition for reconsideration, which the SBA-OHA denied on June 16, 2023.[47] Horseshoe Bay exhausted its administrative remedies and filed its Complaint on January 10, 2024, seeking judicial review in this Court.[48] Horseshoe Bay now moves for summary judgment on its claims against the Defendants.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, courts will grant a motion for summary judgment if there is no genuine dispute of material fact, and the movant shows they are entitled to judgment as a matter of law. In a case seeking judicial review under the APA, however, the district court sits as an appellate tribunal reviewing the case as a question of law, effectively using the certified administrative record in place of summary judgment evidence. *Am. Stewards of Liberty v. Dep't of the Interior*, 370 F. Supp. 3d 711, 723 (W.D. Tex. 2019) (citation omitted). Summary judgment is the vehicle for determining whether the final agency decision should be set aside. *Amin v. Mayorkas*, 24 F.4th 383, 391 (5th Cir. 2022); *id.* Thus, summary judgment follows the standards of review set forth under the APA. *Am. Stewards*, 370 F. Supp. At 723; *see also* 5 U.S.C. § 706(2). Specifically, the Court must set aside an agency decision when it is: (1) in excess of statutory authority; or (2) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A), (C).

## ARGUMENT

When dealing with the public, administrative agencies must "turn square corners." *Dep't of Homeland Sec. v. Regents of the Univ. of Ca.*, 140 S. Ct. 1891, 1907, 1909 (2020). As such, governments may not cut corners by exchanging reasonableness for efficiency. *See id.* Here, the SBA did just that when it denied Horseshoe Bay over $2.3 million in loan forgiveness based solely

---

[47]Decision on Pet. for Recons., at 1–6, ECF No. 30-43.
[48]On May 13, 2024, Horseshoe Bay filed an Amended Complaint.

on an incorrectly assigned code instead of conducting the analysis required by Congress's instructions and the SBA's own regulations. In doing so, the SBA departed from Congress's instructions and decided—for the first time in the SBA-OHA's Corrected Decision—that the PPP follows different rules.

As explained above, business concerns are eligible for PPP loan forgiveness when it meets the size standard for its NAICS Code. 15 U.S.C. § 636(a)(36)(D)(i). The SBA's regulations created the primary-industry analysis to determine a NAICS Code for the business and its affiliates. 13 C.F.R. § 121.107. In accordance with the CARES Act, if that NAICS Code begins in 72, then the affiliates must be disregarded when counting the employees to determine the business's size. 15 U.S.C. § 636(a)(36)(D)(iv). However, despite these existing regulatory and statutory requirements, the SBA-OHA failed to follow this analysis. The SBA-OHA exceeded its statutory authority under the CARES Act by disregarding Congress's instructions. The SBA acted arbitrarily and capriciously by ignoring the relevant primary-industry factors established under SBA regulations in exchange for a "self-classification" Horseshoe Bay made solely for tax purposes. In fact, the requirements for affiliation for IRS purposes are substantially different from those required for PPP Loans and cannot be relied upon as an accurate determination of NAICS Code. *See* 26 U.S.C. § 1504 (defining the term "affiliated group"). Accordingly, the Court should set aside the Corrected Decision.

## I. The SBA-OHA exceeded its statutory authority under the CARES Act when it disregarded Congress's requirement that borrower eligibility for PPP loans be consistent with the section 7(a) rules.

As pure creatures of statute, an agency may wield only the authority granted to it by Congress. *Nat'l Fed'n of Indep. Bus. v. OSHA*, 595 U.S. 109, 117 (2022). Agencies must specifically point to the congressional authority justifying their actions. *Inhance Techs., L.L.C. v. U.S. EPA*, 96 F.4th 888, 893 (5th Cir. 2024). If an agency acted outside the boundaries drawn by

Congress, the action must be set aside. 5 U.S.C. § 702(2)(C). Here, the SBA exceeded the limits of its authority when it refused to conduct a primary-industry analysis consistent with Congress's instruction to apply existing 7(a) loan requirements to PPP loans. Plaintiff was therefore incorrectly classified as a NAICS Code 71 entity ineligible for an affiliation waiver.

When determining the extent of agency authority, courts begin their analysis with the statute's language. *Id.* Even if a statute is ambiguous, courts no longer defer to an agency's interpretation; rather, courts must use their independent judgment to decide whether an agency exceeded its authority. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024). In the immediate case, the CARES Act specifically amended the Small Business Act to incorporate the PPP as a component of the existing 7(a) loan program. *See* § 1102(a)(2) (amending 15 U.S.C. § 636). Accordingly, Congress explicitly instructed the SBA to guarantee loans "*under the same terms, conditions, and processes* as a loan made under [section 7(a)]." *Id.* (emphasis added). Additionally, the CARES Act waived affiliation rules for "any business concern with not more than 500 employees that, as of the date on which the covered loan is disbursed, is assigned a [NAICS] code beginning with 72." *Id.* § 636(a)(36)(D)(iv)(I). Here, the SBA-OHA disregarded Congress's instructions and determined that there is "no place" for applying a primary-industry analysis—a well-established regulatory process established for 7(a) loans and NAICS Code determinations—which would have granted Horseshoe Bay an affiliation waiver and permitted its PPP loan to be eligible for forgiveness.[49] The SBA-OHA improperly deviated from its statutory mandate to adhere to existing 7(a) loan processes and determined that Horseshoe Bay had definitively "self-classified" as having a NAICS Code beginning with 71.[50] This analysis contradicts Congress's instructions.

---

[49]*See* Corrected Decision, at 9, ECF No. 30-43.
[50]*Id.*

The SBA determines whether a business concern is eligible for 7(a) loans based on whether a business concern is "small"—that is, based on its size. 13 C.F.R. § 121.101(a). SBA regulations outline size standards categorized by the business concern's NAICS Code. *Id.* NAICS Codes classify businesses into groups according to their industry. *Id.* § 121.101(b). To accomplish that task, SBA regulations set forth a primary-industry analysis under 13 C.F.R. § 121.107, which serves as a general provision applying to, among other programs, 7(a) loans. SBA regulations explicitly incorporate the primary-industry analysis as a qualification requirement for 7(a) loan applicants.[51] *See id.* § 121.301

Here, however, the SBA tossed out its well-established primary-industry analysis and adopted a completely unprecedented process: The SBA adopted, without question, the NAICS Code that Horseshoe Bay included on its tax returns and loan forgiveness application.[52] On federal tax forms completed for the IRS, a NAICS Code is used to ensure the filing entity's tax compliance, in accordance with IRS affiliation and common parent requirements. The SBA's application instructions required Horseshoe Bay to use the NAICS Code listed on its tax returns, despite the fact that the tax returns fail to accurately address Horseshoe Bay's affiliates.[53] Rather than follow the rules established for 7(a) loan applicants, as Congress directed, the SBA-OHA cut corners by avoiding any analysis for PPP applicants and, instead, wrongfully relying on Horseshoe Bay's "self-classification" made for tax purposes. The SBA did so despite the fact that Horseshoe Bay had specifically requested a modification of its NAICS Code classification with the IRS to more accurately reflect its operations.

---

[51] As discussed later in this Motion, the SBA's Initial Decision even applied the primary-industry analysis at the outset and the SBA based its argument to the OHA upon that analysis. *See* Initial Decision, at 2, ECF No. 30-2; SBA's Resp. to Pet. for Recons., at 8–11, ECF No. 30-43.
[52] *See* Corrected Decision, at 9, ECF No. 30-43.
[53] *See* Corrected Decision, at 9, ECF No. 30-43 ("The instructions for the July 30, 2021 version of Form 3508EZ state that borrowers are to use the NAICS Code from the borrower's tax return.").

Attempting to justify relying on the "self-classification," the SBA-OHA stated that, while it uses the primary-industry analysis to determine a NAICS Code for size-standard purposes, "the CARES Act considers the NAICS Code that a borrower 'is assigned' for waiver purposes."[54] This reasoning is flawed, as the phrase "is assigned" does not authorize the SBA to stray from its ordinary rules for assigning NAICS Codes under section 7(a). *See* 15 U.S.C. § 636(a)(36)(B). Indeed, Congress does not refer to self-assignment anywhere within the CARES Act. As such, the SBA-OHA's interpretation disregards Congress's requirement that PPP eligibility must remain consistent with the existing 7(a) program to the maximum extent possible. *See id.* ("same terms, conditions, and processes"). Conducting a full 7(a) analysis may be less efficient than picking out a NAICS Code from tax forms, but administrative inconvenience never authorizes disregarding a statute's text. *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2458 (2024) (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 169 (2021) (citation omitted)). To use the SBA-OHA's own words, "[t]his task is difficult, but not impossible." *Size Appeal of Grp. O, Inc.*, SBA No. SIZ-4441, at 2 (June 28, 2001).

The SBA-OHA improperly claimed that "under PPP rules, there is no place for considering what [Horseshoe Bay's] 'primary industry' should have been."[55] But Congress provides that PPP rules and 7(a) rules are one in the same. *See* 15 U.S.C. § 636(a)(36)(B) ("same terms, conditions, and processes"). The SBA-OHA's decision disregarded Congress's explicit mandate and changed the rules for affiliation waivers—claiming, with little explanation, that the SBA was following the CARES Act.[56] Disregarding the primary-industry analysis explicitly required for 7(a) loan applications and established through promulgated agency regulations ignores clear Congressional

---

[54]*Id.*
[55]*See* Corrected Decision, at 9, ECF No. 30-43
[56]*See id.*

instruction. The SBA exceeded its authority by failing to adhere to existing 7(a) loan qualification processes as required by the clear and unambiguous language of the CARES Act, and this Court should set aside the Corrected Decision.

## II.     The SBA-OHA abused its discretion and acted arbitrarily and capriciously when it decided Horseshoe Bay was ineligible for loan forgiveness.

Courts play a meaningful role when reviewing final agency decisions under the APA— judicial review is not some trivial, check-the-box procedure. Indeed, it has "serious bite" in this circuit. *Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 856 (5th Cir. 2022) (first citing *Wages & White Lions Invs., L.L.C. v. U.S. Food & Drug Admin.*, 16 F.4th 1130, 1136 (5th Cir. 2021); and then *Texas v. Biden*, 20 F.4th 928, 993 (5th Cir. 2021)) (footnote omitted). An agency action must be set aside when it is arbitrary and capricious. 5 U.S.C. § 706(2)(A). To survive judicial review, agencies must not only make reasonable decisions, but they must also reasonably explain those decisions. *Wages*, 16 F.4th at 1136 (citations omitted). When making a decision, an agency acts unreasonably when it fails to account for relevant factors or clearly erred in its judgment. *Id.* (citations omitted). When the agency then explains that decision, the agency acts unreasonably when it strays from prior practice without a sufficient explanation. *Id.* In each situation, the agency acts arbitrarily, and its decision must be set aside. *Id.* Here, the SBA-OHA acted arbitrarily and capriciously when it determined Horseshoe Bay was ineligible for loan forgiveness because it departed from its prior practice, ignored relevant factors under its own regulations, and conducted a faulty primary-industry analysis in its Initial Decision.

### A.     The SBA-OHA failed to articulate a sufficient explanation for departing from its prior practice of considering PPP loans under general 7(a) loan rules.

An unexplained inconsistency in a determination is the hallmark of an arbitrary agency action. *Data*, 45 F.4th at 857 (citing Encino *Motorcars, LLC v. Navarro*, 576 U.S. 211, 222 (2016)). At a minimum, the agency must show that it was aware it changed positions and show a

good reason for doing so. *Encino*, 576 U.S. at 221 (citing *FCC v. Fox Television Studios, Inc.*, 556 U.S. 502, 515 (2009)). When the agency fails to sufficiently explain why it departed from prior practice or policy, courts offer no deference. *Id.* Here, prior SBA guidance and decisions regarding PPP eligibility continuously followed 7(a) rules, including the primary-industry analysis. But the SBA-OHA departed from this practice when determining Horseshoe Bay's eligibility and failed to sufficiently explain its reason, or even acknowledge that it did so.

The CARES Act placed the PPP under the SBA's existing 7(a) loan program and, in the SBA-OHA's own words, "Loans will be guaranteed under the PPP under the same terms, conditions and processes as other 7(a) loans." Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811, 20816 (Apr. 15, 2020). In fact, the SBA has repeatedly cited to existing 7(a) loan requirements when defining eligibility criteria for PPP loan applicants. In the same Interim Final Rule quoted above, the SBA further stated, "Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SPO) 50 10, Subpart B, Chapter 2." *Id.* at 20812. Both sources concern 7(a) loans, and the SBA repeatedly applies the primary-industry analysis to those loans.

Regarding NAICS Codes, specifically, the SBA-OHA has stated that "when petitioning a determination . . . that requires a designation of the challenged concern's primary industry, an area office must make that designation by" conducting its primary-industry analysis. *Size Appeal of McLendon Acres, Inc.,* SBA No. SIZ-5222, at 5 (Mar. 25, 2011); *see also Grp. O, Inc.,* SBA No. SIZ-4441, at 5 (considering whether industry code selected on appellant's application was "appropriate" under the primary-industry analysis); *Size Appeal of Sargent Pipe Co., Inc.,* SBA No. SIZ-2691, at 1–2 (June 16, 1987) (considering a code designation made by SBA's Disaster Assistance Office under the primary-industry analysis). Notably, the SBA initially conducted a

primary-industry analysis—albeit one that was faulty—in its Initial Decision.[57] The SBA's prior practice of conducting the primary-industry analysis was so well-established that even the SBA itself focused on Horseshoe Bay's primary industry until the SBA-OHA issued its Corrected Decision, where it strayed for the first time.

In its Corrected Decision, the SBA-OHA disregarded the primary-industry analysis entirely, claiming that "PPP rules" only look to "self-classification."[58] Not only does Congress state that PPP rules and 7(a) rules are the same, but the SBA-OHA has repeatedly said so itself. *See* Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20812, 20816. SBA regulations for 7(a) loan applicants explicitly adopt the primary-industry analysis as a condition for loan qualification. Relying on a "self-classification" disregards the SBA's prior practice and regulations that assume the burden of NAICS Code determinations. Of course, business concerns generally choose their own NAICS Code when operating day-to-day, such as when filling out a tax form. But once the SBA is tasked with an eligibility determination pursuant to 7(a) loan processes, the NAICS Code is no longer "self-assigned," as the SBA-OHA claims. In fact, the SBA regularly overrules borrowers' own NAICS Code determinations, and its regulations create an appeals process concerning those determinations. *See* 13 C.F.R. § 121.1102. In *Group O, Inc.*, the SBA-OHA specifically considered whether the industry code appellant listed on its application and SBA Form 355 was "appropriate."[59] SBA No. SIZ-4441, at 1–2. Using the primary-industry analysis, the SBA area office assigned the appellant a different code, "contrary to the statements in Appellant's submissions." *Id.* at 2. On other grounds, the SBA-OHA remanded the case back to the area office for another primary-industry analysis due to errors when analyzing

---

[57]*See* Initial Decision, at 1–2, ECF No. 30-2.
[58]Corrected Decision, at 8, ECF No. 30-43.
[59]Note that the *Group O, Inc.,* opinion refers to the Standard Industrial Classification (SIC) code. In 1997, NAICS Codes replaced the SIC system, but both systems serve the same purpose.

the appellant's receipts. *Id.* at 5. The SBA-OHA clarified, however, that other evidence may contradict representations made on forms and the primary-industry analysis will sort out those contradictions to assign an appropriate code. *Id.* at 4. Indeed, the NAICS Codes listed on forms may be part of the analysis, but they have never been the *entire* analysis.

The SBA-OHA failed to address any of its prior practices or explain why the SBA conducted a primary-industry analysis in its Initial Decision, but reversed course in its Corrected Decision. Instead, the SBA-OHA offered a one-paragraph, winding explanation claiming the SBA applies the primary-industry analysis to NAICS Code determinations for size standards, but not to NAICS Code determinations for waiver purposes.[60] The SBA-OHA reasoned that it only "uses the NAICS Code that [Horseshoe Bay] assigned itself," and that there is "no place" for a primary-industry analysis.[61] The SBA-OHA provided no further explanation and, thus, the Corrected Decision is insufficient.

The SBA-OHA failed to rationally explain why the primary-industry analysis—a rule that the SBA consistently applies to eligibility decisions under 7(a)—suddenly did not apply to this case. Further, the SBA-OHA ignored that its prior decisions and guidance referred borrowers to general 7(a) rules for eligibility determinations. *See, e.g.*, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20812 (directing borrowers to 7(a) program rules). The SBA-OHA also failed, at a minimum, to even acknowledge that the SBA initially considered Horseshoe Bay's primary industry, which both Horseshoe Bay *and the SBA itself* relied on in their briefing to the SBA-OHA.[62] That fact alone shows that even area offices of

---

[60]*Id.* at 9. Notably, the vast majority of the paragraph lays out the size determination procedure, which the SBA-OHA claimed does not apply here. Only the final three sentences attempted to explain why the primary-industry analysis does not apply. Nowhere in the paragraph does the SBA-OHA address its departure from 7(a) rules.
[61]*Id.*
[62]*See* Pet. of Appeal from Loan Forgiveness Denial Decision, ECF No. 30-2; SBA's Resp. to Pet. for Recons., at 8–11, ECF No. 30-43.

the SBA believed, based on prior practice, that a primary-industry analysis was proper.[63] Rather than addressing those concerns, the SBA-OHA offered an explanation tantamount to, "Because we said so." Under the standards of judicial review, the SBA-OHA cannot just "say so"—it must say *why*. *See Encino*, 576 U.S. at 221. Because the Corrected Decision fails to offer a rational explanation, it must be set aside as arbitrary and capricious.

**B.      The SBA-OHA arbitrarily relied on the Horseshoe Bay's "self-classification" and ignored all other factors identified in SBA regulations.**

An agency must explain a rational connection between its decision and the facts presented to it. *Ohio v. EPA*, 603 U.S. 279, 292 (2024) (citation omitted). Built into that rule is the notion that agencies "cannot simply ignore 'an important aspect of the problem.'" *Id.* (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). If an agency ignores important circumstances, then its decision cannot be rational. *Id.* Here, the SBA-OHA disregarded all considerations except for Horseshoe Bay's "self-classification" that, as Horseshoe Bay repeatedly explained to the SBA, did not accurately represent its business for PPP eligibility purposes. Thus, the SBA-OHA's analysis was irrational and arbitrary.

The SBA-OHA claimed that it determines PPP eligibility through the NAICS Code listed on the application form, but the SBA requires applicants to use the NAICS Code listed on their tax returns.[64] The SBA form does not allow applicants to elect a different NAICS Code, even if it is more accurate for PPP eligibility or where the NAICS Code listed does not appropriately reflect the operations of the PPP Loan applicant (such as in the case of disregarded entities included on the tax filing).[65] Further, the SBA-OHA pointed to a regulation permitting the SBA to determine

---

[63]Additionally, any substantive alteration to the existing regulatory framework for size determinations should have gone through the traditional notice-and-comment rulemaking procedure because it was not merely interpretive guidance. 5 U.S.C. § 552(a) (setting forth the notice-and-comment process for substantive rulemaking).
[64]*See* Corrected Decision, at 9, ECF No. 30-43.
[65]*Id.*

eligibility based on the CARES Act, rules and guidance available at the time of the borrower's application, and the terms of the borrower's loan.[66] Those sources included, but were not limited to, the "SBA's regulations under 13 CFR 120.110 (as modified and clarified by the PPP Interim Final Rules) and 13 CFR 121.301(f) and the information, certifications, and representations on the Borrower Application Form . . . and Loan Forgiveness Application Form."[67] Under 13 C.F.R. § 120.110, the SBA outlines general ineligibility rules for 7(a) loans and, under 13 C.F.R. § 121.301(f), the SBA includes another affiliation rule.[68] The list of rules is explicitly non-exhaustive and, thus, includes the SBA's other regulations pertaining to an applicant's primary industry. The SBA-OHA, however, relied only on the forms and considered nothing else.

When a business concern operates with multiple affiliates that are disregarded *for tax purposes*, the SBA cannot rely solely on tax forms that do not accurately consider such affiliates *for NAICS Code purposes*. As stated above, the NAICS Code system may be "self-assigned" as businesses independently complete their tax forms for purposes completely unrelated to PPP eligibility, but that is no longer the case when brought to the SBA. The Form 1065 reflects the information from Horseshoe Bay and its affiliates in accordance with IRS regulatory requirements, resulting in a comparison of "apples to oranges" for PPP eligibility purposes. The proper pathway is for the SBA to conduct a primary-industry analysis in accordance with 13 C.F.R § 121.107. The SBA, in some cases, may permissibly rely on a self-designation, but not when it is aware that the self-designation is inaccurate for PPP purposes, and certainly not where a statutory waiver of

---

[66]*Id.* at 6 (citing Loan Forgiveness Requirements & Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8294 (Feb. 3, 2021) (to be codified 13 C.F.R. pt. 120).

[67]*Id.* at 6 (quoting Loan Forgiveness Requirements & Loan Review Procedures as Amended by Economic Aid Act 86 Fed. Reg. at 8294).

[68]The CARES Act waives the affiliation rules for employee-count under both 13 C.F.R. §§ 121.103 and 121.301(f), per guidance from an internal memorandum on April 4, 2020. U.S. Small Bus. Admin., Off. of General Counsel, Internal Memorandum on Size Eligibility and Affiliation Under the CARES Act (Apr. 4, 2020). The SBA still considers affiliates for NAICS Code determinations.

affiliation modifies the appropriate analysis of primary industry. A NAICS Code's whole purpose is to represent a business's primary industry. The SBA's programs are constructed around the central idea of correctly classifying a business's primary industry, even offering an administrative appeal process to address unfavorable determinations. *See* 13 C.F.R §§ 121.1101–.1103 (appeals of size determinations and NAICS Code designations). Thus, logically and rationally, the SBA-OHA cannot simply ignore the totality of the circumstances in favor of selecting a number on a form which it knows is inaccurate for PPP eligibility.

The SBA-OHA's hands are not tied by an applicant's self-designation, as the Corrected Decision argues. That notion is especially true when the applicant explains that the self-designation is inaccurate. Disregarding all other factors in favor of one factor that the agency knows fails to accurately represent the circumstances is, by definition, arbitrary and capricious. *See State Farm*, 463 U.S. at 43 (stating an agency is arbitrary when it fails to consider important factors or offers an explanation counter to the evidence). Accordingly, the Corrected Decision must be set aside.

**C.      The SBA conducted a faulty primary-industry analysis in its Initial Decision.**

The SBA-OHA must consider Horseshoe Bay's primary industry according to its prior practice. Although the SBA did so in its Initial Decision, that analysis was also arbitrary. As previously described, the SBA cannot ignore relevant and important pieces of the analysis. *See Ohio*, 603 U.S. at 292 (citing *id*. at 43). Here, the primary-industry analysis enumerates specific factors for the SBA to consider when assigning a business concern its NAICS Code, where it states:

> In determining the primary industry in which a concern or a concern *combined with its affiliates* is engaged, *SBA considers the distribution of receipts, employees and costs of doing business* among the different industries in which business operations occurred for the most recently completed fiscal year. SBA may also consider other factors, such as the distribution of patents, contract awards, and assets.

*Id.* (emphasis added). Under this primary-industry analysis, the SBA is required to consider affiliates. 13 C.F.R. § 121.107. Initial Decision, at 1–2, ECF No. 30-2.[69] Here, The SBA's analysis was arbitrary and capricious because it ignored Horseshoe Bay's affiliates and considered only Horseshoe Bay's *revenue*, which is <u>not</u> an enumerated factor under the primary-industry analysis.

In its faulty analysis, the SBA considered Horseshoe Bay *without* its affiliates and stated that "the majority of [Horseshoe Bay's] revenue was derived from Membership rather than Food & Beverage," and thus decided Horseshoe Bay was ineligible for a NAICS 72 waiver.[70] That analysis disregards the SBA's own regulations. 13 C.F.R. § 121.301(a) is among many overlapping parts governing 7(a) and PPP eligibility, serving as the specific provision identifying the applicable size standard.[71] The subsection requires a business concern to satisfy two requirements: (1) the size of the applicant alone must not exceed the size standard for its primary industry; and (2) the size of the application combined with its affiliates must not exceed the size standard designated for "either the primary industry of the applicant alone or *the primary industry of the applicant and its affiliates, whichever is higher. Id.* (emphasis added). Accordingly, section 121.301 operates as a specific provision governing the general primary-industry analysis under section 121.107 and, thus, requires the SBA to consider Horseshoe Bay's affiliates. *See Grp. O*, SBA No. SIZ-4441, at 3 (requiring the SBA to include affiliates because a specific regulation "explicitly stated that this primary industry determination included the firm's affiliates").

First, the SBA must determine the primary industry of a business concern "combined with its affiliates." 13 C.F.R. § 121.107. Yet, the SBA considered Horseshoe Bay in isolation, ignoring how the affiliates contribute to the overall picture of Horseshoe Bay's business. Second, after

---

[69]Affiliation rules are only waived when counting employees, not when considering Horseshoe Bay's primary industry.
[70]Initial Decision, at 1–2, ECF No. 30-2.
[71]*See* Corrected Decision, at 9, ECF No. 30-43 (describing 121.301).

including the affiliates, the SBA must consider "the distribution of receipts, employees *and* costs of doing business among the different industries in which business operations occurred." *Id.* (emphasis added). The SBA defines "receipts" to include revenue, but revenue is not the sole consideration—it is merely one subpart of one enumerated factor. *See id.* at § 121.104(a) (defining "receipts" to include revenue and other relevant inputs such as "total income" and "cost of goods sold"). This requirement *mandates* the SBA consider each of the three factors listed in the first sentence, not one (or a subpart of one) exclusively. It also gives discretion to the SBA to consider additional factors such as those listed in the second sentence.

But even if the SBA properly ignored the affiliates, its primary-industry analysis failed to address the requirements enumerated by regulation. Horseshoe Bay still should have fallen within a NAICS-72 category considering its "receipts, employees and costs of doing business." *See id.* § 121.107 (primary-industry analysis). Receipts, in the form of food and beverage, accounted for its largest source of revenue at 25.8% for 2019, the most recently completed calendar year at the time of the loan disbursement, whereas revenue from membership only accounted for 20.2%.[72] Additionally, food and beverage employees comprised the largest percentage of Horseshoe Bay's personnel at 41%, whereas only 21% of employees worked in golf operations and grounds maintenance.[73] Finally, food and beverage expenses accounted for 39.7% of total operating expenses, whereas golf expenses only accounted for 35.3%.[74] Under each of the factors specified under regulation, Horseshoe Bay should have qualified as a NAICS 72 entity, and viewed as a whole, these would further support Horseshoe Bay's qualification as an entity in the primary industry of a NAICS 72 category organization. Ultimately, the SBA's primary-industry analysis

---

[72]AR at 1145; *see also* Am. Compl. ¶ 54.
[73]AR at 352.
[74]AR at 1145; *see also* Am. Compl. ¶ 54.

was unreasonable, and Horseshoe Bay's concerns were not addressed by the SBA-OHA's Corrected Decision, which stated that *sole reliance* on the "self-classification" would be sufficient in the absence of *any* primary industry analysis.

Although the SBA's regulations were clear and unambiguous, it failed to follow them.[75] If the SBA properly designated Horseshoe Bay with a NAICS Code beginning in 72, Horseshoe Bay would have been eligible for an affiliation waiver, and thus loan forgiveness, because it employed fewer than 300 individuals, well below the 500-employee maximum under the CARES Act. Accordingly, the SBA's analysis was arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, Horseshoe Bay asks that this Court grant this Motion for Summary Judgment on all claims against Defendants and set aside the Corrected Decision, as well as all other such relief in law or in equity to which Horseshoe Bay may be justly entitled.

Dated: January 13, 2025

Respectfully submitted,

/s/ *Adrienne E. Frazior*
Adrienne E. Frazior
Texas State Bar No.: 24059546
afrazior@polsinelli.com
Ashley N. Gould
Texas State Bar No.: 24098171
agould@polsinelli.com
POLSINELLI PC
2950 N. Harwood Street, Suite 2100
Dallas, Texas 75201
Telephone: (214) 661-5596
Facsimile: (214) 292-8794

*-and-*

James W. Kim
*Admitted Pro Hac Vice*

---

[75]Courts do not defer to an agency's regulatory interpretation when the regulation is clear and unambiguous—a clear regulation just "means what it means." *Kisor v. Wilkie*, 388 U.S. 558, 574–75 (2019).

james.kim@polsinelli.com
POLSINELLI PC
1401 Eye Street NW, Suite 8900
Washington, DC 20005
Telephone: (202) 626-8301
Facsimile: (202) 350-9447

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of January, 2025, a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF system pursuant to the Federal Rules of Civil Procedure.

/s/ *Adrienne E. Frazior*
Adrienne E. Frazior