UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HORSESHOE BAY RESORT HOLDINGS, LLC | ‖ | |
| Plaintiff, | ‖ | |
| v. | ‖ | No. A:24-CV-00040-DAE |
| THE UNITED STATES SMALL BUSINESS ADMINISTRATION, e*t al.,* | ‖ | |
| Defendants. | ‖ | |

**DEFENDANTS' RESPONSE TO PLAINTFF'S MOTION FOR SUMMARY JUDGMENT**

THE UNITED STATES SMALL BUSINESS ADMINISTRATION ("SBA"), ISABEL CASILLAS GUZMAN ("the Administrator") and the UNITED STATES OF AMERICA ("the United States") (collectively "Defendants") respond to Plaintiff's Motion for Summary Judgment [ECF 37] as follows:

**Plaintiff Makes Key Omissions and Misstatements**

Although Plaintiff correctly states that an entity with a NAICS Code beginning with 72 is eligible for an affiliation waiver, Plaintiff selectively, and critically omits the second key part of the statute.[1] To be eligible for the waiver, the NAICS Code beginning with 72 must be assigned at the time the loan was disbursed. 15 U.S.C. § 636(a)(36)(D)(iv)(I), *see also* SBA Second IFR 85 Fed. Reg. 20818. Plaintiff does not allege, nor would it be true, that SBA had ever "assigned" a NAICS code to Plaintiff at the time the loan was disbursed. As such, the source of Plaintiff's NAICS code when the loan was disbursed, which is the only relevant time for the affiliation waiver, was from Plaintiff itself, even though Plaintiff now claims it was all a big mistake (that

---

[1] ECF 37, pg. 4

SBA was somehow supposed to rectify).[2] Plaintiff also omits that in addition to self-certifying in its application to its lender and SBA that it was eligible for the loan under SBA rules. Plaintiff also certified that it employed no more than the greater of 500 employees, or if applicable, the size standard established by SBA for the *Applicant's* industry.[3] This further shows that the applicable NAICS code was Plaintiff's own self-assigned code. SBA would have no way of knowing an applicant's industry and instead relied on the applicant's self-certification.

Plaintiff also alleges that SBA "approved" their loan.[4] This is factually incorrect. In the CARES Act, Congress mandated that PPP lenders be given "delegated authority" to make and approve PPP loans without prior SBA review. 15 U.S.C. § 636(a)(36)(F)(ii)(I). Plaintiff's lender made the approval decision. Further, in accordance with the CARES Act, PPP loans, including this one, were heavily dependent on self-certification by the applicant. *See* SBA First IFR, 85 Fed. Reg. 20811, ¶ 1. To obtain forgiveness, an eligible borrower applies to its lender, which determines whether the borrower is entitled to forgiveness under the Act, and, if so, submits a request for payment to SBA. 15 U.S.C. § 636m(g); 85 Fed. Reg. 38,304, 38,306 (June 26, 2020). SBA then remits the appropriate amount to the lender—subject, however, to any SBA review of the loan. 15 U.S.C.§ 636m(c)(3); 85 Fed. Reg. at 38,306. SBA appropriately reviewed this loan for eligibility/forgiveness after it funded, along with many others.

Plaintiff also repeatedly claims that SBA only considered its NAICS code on its tax returns.[5] This is again factually incorrect. As explained in the Final Loan Review Decision ("FLRD"), SBA not only considered Plaintiff's the NAICS code on Plaintiff's tax return, but also the entire set of financial data submitted by Plaintiff's attorneys as part of its multi-level

---

[2] Plaintiff also alleges the loan was disbursed on May 1, 2020. ECF 37, Pg. 5. However, the signed, certified SBA Lender's Transcript of Account shows it was disbursed on the same day of the application, April 28, 2020. ECF 30-30, pg. 47.
[3] ECF 30-24, pg. 23.
[4] ECF 37, pg. 5
[5] ECF 37, pp. 8, 16-18.

forgiveness analysis.[6] Based on a thorough review of the documents and data Plaintiff submitted, SBA reasonably concluded that Plaintiff was primarily in the Golf Course/Country Club business, which it most certainly is, and not primarily the Food and Beverage business, even though that is a component of Plaintiff's business (along with an airport and aviation fuel sales). Plaintiff just disagrees with SBA's forgiveness decision, based on their own math and interpretation of the data. SBA disagreed and clearly explained why. Plaintiff then states that "SBA, in some cases, may permissibly rely on a self-designation, but not when it is aware that the self-designation is inaccurate for PPP purposes."[7] Plaintiff cites no authority whatsoever for this statement, nor could any be located. Likewise, Plaintiff cites no authority saying it is "impermissible." Plaintiff doesn't say when or under what conditions, or what "some cases" would entail so that it would be "permissible," but this begs the question. SBA determined that Plaintiff's self-assigned NAICS code was perfectly accurate, and in fact supported by Plaintiff's own financial data.

**Plaintiff's Threshold Argument That SBA Was Required to Assign Plaintiff a NAICS Code is Incorrect and Not Supported By Any Authority**

Plaintiff's threshold argument is that SBA was required to assign a NAICS code to Plaintiff in connection with its request for forgiveness, and not just use the NAICS code it assigned itself.[8] First, as noted *supra,* SBA did not merely rely on Plaintiff's self-assigned NAICS code to the exclusion of other data and evidence. Second, Plaintiff's argument is incorrect. Plaintiff cites 13 C.F.R. § 121.101 for the proposition that "SBA assigns NAICS Codes according to a business concern's primary industry..."[9] The regulation says no such thing. By its plain reading, it says that SBA establishes and promulgates size standards based on NAICS codes, and then directs where those standards and corresponding NAICS codes can be found. *Id.* Here, Plaintiff is not claiming that it falls into an incorrect size standard, or that the size standard associated with a particular

---

[6] *See* ECF 36, pp.5-6, ¶¶ 12-15, *see also* pp. 13-14.
[7] ECF 37, pg. 17.
[8] ECF 37, pp. 4-5, 8-11.
[9] ECF 37, pg. 4.

NAICS code by SBA is incorrect. Plaintiff is claiming that it wants to be in a different NAICS code not to fall under a different size standard, but instead just to get an affiliation waiver so it doesn't exceed the applicable size standard and have to pay back its PPP loan.[10]

Plaintiff then cites 13 C.F.R. § 121.107 for the proposition that "SBA must first classify a business's primary industry, including its affiliates and assign it a NAICS code."[11] Citing the same regulation, Plaintiff further claims "[t]he SBA's regulations created the primary-industry analysis to determine a NAICS Code for the business and its affiliates."[12] Again, the regulation says no such thing. Section 121.107, by its plain reading, simply describes the considerations for a primary industry analysis for a concern, or a concern combined with its affiliates. *Id.* Nowhere does it say what Plaintiff suggests, or even mention "assigning a NAICS code."

In fact, not a single authority cited by Plaintiff says what they suggest: that SBA is required to ignore a borrower's self-assigned NAICS code at the time a PPP loan is disbursed, then conduct its own independent analysis of the borrower and its selected affiliates in connection with a request for forgiveness, and then retroactively assign a NAICS code requested by the borrower for the sole purpose of qualifying for an affiliation waiver, even if SBA doesn't believe the financial data supports such an "assignment." This is incorrect. Further, Plaintiff continues to conflate the unrelated issue of size determinations made under unrelated government contracting and procurement programs.[13] Appeals from size determinations and NAICS code designations are completely different than an appeal from an SBA loan review decision, and have their own rules of practice. 13 C.F.R. §§ 134.301, 134.1201(g).[14] Indeed, NAICS code appeals are calculated from "the issuance of the solicitation, or amendment to the solicitation affecting the NAICS code or size

---

[10] ECF 37, pg. 9
[11] ECF 37, pp. 4-5
[12] ECF 37, pg. 8.
[13] ECF 37, pp.13-14. *Group O, Inc.*, 2001 WL 789239 at *1, SBA No. SIZ-4441 (June 28, 2001), cited by Plaintiff, is yet another case dealing with an appeal of a formal size determination made by SBA's Office of Government Contracting under an unrelated program.
[14] As noted by Judge Ambrow in the PFR Decision. ECF 30-43, Pg. 18.

4

standard." *Id.* § 134.304(b). Here, there was no solicitation for any bid and no government contract involved.

**The Supreme Court's Holding in Loper Bright Enterprises v. Raimondo Does Not Change the Standard of Review or Analysis**

Plaintiff cites to the Supreme Court's holding in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) for the proposition that the Court must use its own independent judgment to decide if SBA exceeded its statutory authority.[15] However, the Court's holding in *Loper Bright* was limited to the question of whether the *Chevron* doctrine[16] should be overruled or clarified, *Id.* at 377, 409-413. Overruling *Chevron*, the Court's holding was essentially that courts are no longer required to defer to an agency's interpretation of a statute simply because it may be silent or ambiguous on the issue. *Id.* at 399-404, 407-411. Here, neither Plaintiff nor SBA claim that any of the statutes or regulations in issue are silent or ambiguous. To the contrary, Plaintiff claims they are very clear and complains that SBA just did not follow them. Likewise, SBA alleges no statutory ambiguity that required special "interpretation" by SBA. The statutes, regulations and guidance say what they say. As such, this case does not implicate the *Chevron* doctrine, and the applicable narrow, deferential standard of review is the same as any APA case, which does not allow the court to substitute its judgment for SBA's and simply requires that SBA acted within the "zone of reasonableness" and reasonably considered the issues and explained itself.[17]

**WHEREFORE**, Defendants respectfully pray that the Court grant their Motion for Summary Judgment, enter judgment in Defendants' favor on all of Plaintiff's claims and grant Defendants such other and further relief to which they may be entitled.

---

[15] ECF 37, pg. 9
[16] The *Chevron* doctrine basically required courts to defer to "permissible" agency interpretations of statutes administered by the agency that are silent or ambiguous on the issue, even if the court read the statute differently. *Loper Bright*, 603 U.S. at 377, *see also Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-43 (1984).
[17] *See* ECF 36, pp. 7-8.

Dated: January 24, 2025

Respectfully submitted,

**Jaime Esparza**
United States Attorney

By: _/s/ Darryl S. Vereen_
**Darryl S. Vereen**
Assistant United States Attorney
Texas Bar No. 00785148
darryl.vereen@usdoj.gov
601 NW Loop 410, Suite 600
San Antonio, Texas 78216-5597
Tel. (210) 384-7170
Fax. (210) 384-7358

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I certify that on January 24, 2025, I electronically filed this document with the Clerk of Court using the CM/ECF system. The CM/ECF system will send notification to the following CM/ECF participant(s):

Adrienne Frazier, Esq.
2950 N. Harwood Street
Suite 2100
Dallas, Texas 75201
(214) 661-5596
afrazier@polsinelli.com

James W. Kim, Esq.
1401 Eye Street, N.W.
Suite 800
Washington, D.C. 20005
(202) 626-8301
james.kim@polsinelli.com

Tiffani A. Skroch, Esq.
2950 N. Harwood St.
Suite  2100
Dallas, TX 75201
(214) 661-5541
tskroch@polsinelli.com

*/s/ Darryl S. Vereen*
**Darryl S. Vereen**
Assistant United States Attorney