IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HORSESHOE BAY RESORT HOLDINGS, LLC, | § | No. 1:24-cv-00040-DAE |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| THE UNITED STATES SMALL | § | |
| BUSINESS ADMINISTRATION | § | |
| and  ISABELLA CASILLAS | § | |
| GUZMAN, in her official | § | |
| capacity as Administrator  of the | § | |
| Small Business Administration, | § | |
| | § | |
| *Defendants*. | § | |

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court is the Motion for Summary Judgment, filed on

January 10, 2025, by Defendants the United States Small Business Administration

(SBA) and Isabel Casillas Guzman ("Defendants").  (Dkt. # 36.)  Plaintiff

Horseshoe Bay Resort Holdings, LLC ("Horseshoe Bay" or "Plaintiff") filed a

response on January 24, 2025.  (Dkt. # 40.)  Also before the Court is Plaintiff's

Motion for Summary Judgment, filed on January 13, 2025.  (Dkt. # 37.)

Defendants filed a response on January 24, 2025.  (Dkt. # 39.)  Plaintiff filed a

reply on February 7, 2025.  (Dkt. # 42.)

1

The Court finds these matters suitable for disposition without a hearing.  After careful consideration of the parties' briefs and the relevant law, the Court **GRANTS** Defendants' Motion for Summary Judgment (Dkt. # 36) and **DENIES** Plaintiff's Motion for Summary Judgment (Dkt. # 37).

<u>BACKGROUND</u>

Plaintiff Horseshoe Bay appeals the denial of loan forgiveness under the Small Business Administration's Paycheck Protection Program (PPP).  The Court first provides an overview of the legal framework before proceeding to the background of this case.

I.    <u>Legal Background</u>

A.    <u>Section 7(a) of the Small Business Act</u>

"The Small Business Act of 1953 created the Small Business Administration to 'aid, counsel, assist, and protect insofar as is possible the interests of small-business concerns in order to preserve free competitive enterprise . . . and to maintain and strengthen the overall economy of the Nation.'"  <u>SBA v. McClellan</u>, 364 U.S. 446, 447 (1960) (quoting 15 U.S.C. § 631(a)).  In furtherance of these objectives, the Small Business Administration ("SBA") was given the power to lend money to small businesses.  <u>Id.</u>  (citing 15 U.S.C. § 631(a)).  Section 7(a) of the Act empowers the SBA to "make loans to any qualified small business concern."  15 U.S.C. § 636(a).  A "small business concern" is one "which

2

is independently owned and operated and which is not dominant in its field of operation."  15 U.S.C. § 632(a).

The Small Business Act also grants the SBA Administrator the ability to "make such rules and regulations as he deems necessary to carry out the authority vested in him by or pursuant to this chapter."  15 U.S.C. § 634(b)(6). Accordingly, the SBA has promulgated various rules and regulations defining certain eligibility requirements to obtain a Section 7(a) loan.  One of those eligibility requirements is that an applicant be "small" under the "size requirements of part 121 of this chapter (including affiliates)."  13 C.F.R. § 120.100(d).  Part 121 explains that the size standards define whether a business entity is "small," and therefore eligible for programs and preferences reserved for "small business" concerns.  13 C.F.R. § 121.101(a).  In turn, the SBA has defined size standards for businesses based on the "primary industry" in which a business operates.  When determining a business concern's "primary industry," the SBA considers:

> [T]he distribution of receipts, employees and costs of doing business among the different industries in which business operations occurred for the most recently completed fiscal year. SBA may also consider other factors, such as the distribution of patents, contract awards, and assets.

13 C.F.R. § 121.107.

The size standards for each industry are generally established under the North American Industry Classification System (NAICS), which assigns codes

to various categories of economic activity.  13 C.F.R. § 121.101(a) ("Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS).").  The SBA, in turn, sets for each NAICS code size limits for maximum revenue and number of employees for a business to be considered a "small business."  Id.; see also 13 C.F.R. § 121.201 (providing table of NAICS codes and respective size standards for annual receipts and employees).

The regulations also contain "affiliation" rules, under which, in certain circumstances, the SBA includes other entities, or affiliates, owned by the business in determining the size of the business.  13 C.F.R. § 121.301 ("SBA interprets this statutory definition [of a small business concern] to require, in certain circumstances, the inclusion of other entities ("Affiliates") owned by the applicant or an owner of the applicant in determining the size of the applicant."); 13 C.F.R.§ 121.103 (explaining how the SBA determines affiliation).

B.    The CARES Act and the PPP

In response to the global coronavirus pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").  In re Hidalgo Cnty. Emergency Serv. Found., 962 F.3d 838 (5th Cir. 2020) (citing Pub. L. No. 116-136, 134 Stat. 281 (2020)).  The CARES Act made government-guaranteed loans available to qualified small businesses through the Paycheck

4

Protection Program ("PPP").  Id.  The PPP was established under Section 7(a) of the Small Business Act.  15 U.S.C. § 636(a)(36).  Thus, generally, the Administrator "may guarantee covered loans under the same terms, conditions and processes" as other Section 7(a) loans.  Id. at § 636(36)(B).  The loans are made by the SBA's participating banks and guaranteed by the SBA.  The Act provided that a qualified recipient is eligible for loan forgiveness on a covered loan to the extent it was used to pay expenses including payroll, mortgage interest, rent, and utilities.  15 U.S.C. §§ 636m(a)(4), (b).

The PPP expanded loan eligibility by declaring that, in addition to small business concerns, "*any* business concern" would be eligible for a covered loan if it employed "not more than the greater of—(I) 500 employees; or (II) if applicable, the size standard in the number of employees established by the Administration for the industry" in which the business concern operates.  15 U.S.C. § 636(a)(36)(D)(i)(I)–(II).  The PPP also waived the affiliation rules under 13 C.F.R. § 121.103 for "any business concern with not more than 500 employees that, as of the date on which the covered loan is disbursed, is assigned a North American Industry Classification System code beginning with 72."  15 U.S.C. § 636(a)(36)(D)(iv).

II.    Factual and Procedural History

    A.    Factual Background

The following facts are taken from the administrative record.[1]  See

Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd., 602 F.3d 687, 706 (5th

Cir. 2010) ("When reviewing an agency action under the APA, we review 'the

whole record or those parts of it cited by a party.'")  (quoting 5 U.S.C. § 706).

On April 28, 2020, Plaintiff applied for, and SBA approved, a loan in

the amount of $2,370,747.50 for Plaintiff through the Paycheck Protection

Program.  (Dkt. # 30-24 at 22–23.)  Plaintiff's Borrower Application Form listed

380 employees and separately listed several affiliated businesses.  (Id. at 22, 24.)

The Borrower Application Form did not request a NAICS Code.  (Id.)  On

September 24, 2021, Plaintiff submitted a PPP Loan Forgiveness Application to the

SBA.  (Dkt. # 30-3 at 75.)  The Loan Forgiveness Application identifies Plaintiff's

NAICS Code as 713910.  (Id. at 73.)

On January 24, 2023, the SBA issued its Final SBA Loan Review

Decision ("Initial Decision"), finding that Plaintiff was ineligible for the PPP loan,

and thus ineligible for loan forgiveness.  (Dkt. # 30-2 at 38.)  In its decision, the

---

[1] Plaintiff asserted in its response to Defendants' Motion that Defendants' "undisputed" facts were misleading because they omitted certain information.  The Court presents the facts as found in the Administrative Record.

SBA found that Plaintiff exceeded the maximum allowable number of employees and the SBA small business size standards.  (Id.)  The SBA found Plaintiff and its affiliates to have a combined employee count of 593, which the SBA indicated exceeds its Employee-Based size standard of 500.  (Id.)   The SBA also found Plaintiff exceeded the Receipts-Based size standard.  (Id.)  The decision further indicated that the loan was ineligible for an affiliation waiver because Plaintiff does not have a NAICS code beginning with 72.  (Id. at 39.)

Plaintiff then initiated an appeal to the SBA's Office of Hearings and Appeals ("OHA").  The OHA issued its Corrected Decision ("Final Decision")[2] on May 9, 2023.  (Dkt. # 30-43 at 185.)  The OHA Administrative Law Judge affirmed the SBA's Initial Decision that Plaintiff was not eligible for loan forgiveness, finding the Initial Decision was not based on clear error of fact or law. (Id. at 194.)  Plaintiff then filed a petition for reconsideration with the SBA-OHA which was denied on June 16, 2023.  (Dkt. # 30-43 at 178–183.)

B.    Procedural History

Plaintiff appealed the SBA's Final Decision to this Court on January 10, 2024, in a Complaint brought against the SBA and Isabel Casillas Guzman in her official capacity as Administrator of the SBA.  (Dkt. # 1.)  Plaintiff's three-

---

[2] The OHA indicated that its "Corrected Decision" was issued only to clarify typographical errors, and that the substance "is unchanged."  (Dkt. # 30-43 at 185.)

count First Amended Complaint, filed May 13, 2024, alleges that, pursuant to 5 U.S.C. § 706(2)(A), the agency action was (1) not in accordance with law (Count I) and (2) arbitrary and capricious (Count II).  Plaintiff also seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 (Count III) that Plaintiff should be classified as a NAICS 72 entity and eligible for the affiliation waiver.  (Dkt. # 21.)

Plaintiff and Defendants have now filed cross-motions for summary judgment on all counts.  (Dkts. ## 36, 37.)

## LEGAL STANDARD

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Vann v. City of Southaven, 884 F.3d 307, 309 (5th Cir. 2018) (citations omitted); see also Fed. R. Civ. P. 56(a).  In the context of a challenge to an agency action under the Administrative Procedure Act ("APA"), "[s]ummary judgment is the proper mechanism for deciding, as a matter of law, whether an agency's action is supported by the administrative record and consistent with the APA standard of review." Blue Ocean Inst. v. Gutierrez, 585 F. Supp. 2d 36, 41 (D.D.C. 2008). Therefore, in evaluating a case on summary judgment, the Court applies the standard of review from the APA.  See Shell Offshore Inc. v. Babbitt, 238 F.3d 622, 627 (5th Cir. 2001); see also Tex. Oil & Gas Ass'n v. EPA, 161 F.3d 923, 933 (5th Cir. 1998).

8

When reviewing for arbitrariness and capriciousness, a court considers whether an agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)). Agency action is arbitrary and capricious when "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Id. The scope of review "is narrow and a court is not to substitute its judgment for that of the agency." Id. Courts look to "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Judulang v. Holder, 565 U.S. 42, 53 (2011). Even though arbitrary-and-capricious review is narrow, "courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking." Id.

The APA additionally requires courts to set aside agency action that exceeds statutory authority. 5 U.S.C. § 706(2)(C). In determining whether an agency has acted within its statutory authority, courts "must exercise their

independent judgment." <u>Loper Bright Enters. v. Raimondo</u>, 603 U.S. 369, 412

(2024).

<u>DISCUSSION</u>

The Court addresses the parties' summary judgment arguments in

turn.

I.    <u>Whether the SBA Exceeded its Statutory Authority</u>

Plaintiff argues that pursuant to 5 U.S.C. § 706(2)(C),[3] the SBA

exceeded its statutory authority by stating in the Final Decision that under the PPP

rules, "there is no place for considering what [Plaintiff's] 'primary industry' should

have been." (Dkt. # 30-43 at 193.) Specifically, Plaintiff argues that SBA deviated

from its statutory mandate to adhere to existing Section 7(a) loan processes by

adopting the NAICS Code that Plaintiff listed on its tax returns and Loan

Forgiveness Application, rather than conducting its own "primary-industry

analysis" to determine whether that code was accurate. (Dkt. # 37 at 9–11.) In

_____

[3] Plaintiff cites this section of the APA, 5 U.S.C. § 706(2)(C), in its motion for
summary judgment. (Dkt. # 37 at 13.) The Court notes that Plaintiff's First
Amended Complaint pleads violations only of 5 U.S.C. § 706(2)(A). However,
"[s]o long as a pleading alleges facts upon which relief can be granted, it states a
claim even if it 'fails to categorize correctly the legal theory giving rise to the
claim.'" <u>Homoki v. Conversion Servs., Inc.</u>, 717 F.3d 388, 402 (5th Cir. 2013).
The First Amended Complaint can be fairly read to allege that the SBA exceeded
its statutory authority. The Court thus proceeds with its analysis of Plaintiff's
argument.

support of this view, Plaintiff argues that SBA regulations define a "primary-industry analysis" which serves as a general provision that applies to Section 7(a) loans.  Plaintiff also suggests it had no choice but to list the NAICS Code from its tax returns because the SBA's application instructions required applicants to do so.

Contrary to Plaintiff's assertions in its motion, none of the statutes or regulations to which Plaintiff directs the Court require the SBA to conduct a "primary-industry analysis"—whether for Section 7(a) or PPP loans.  The term "primary-industry analysis" is one which does not appear in any of the statutes, rules, or regulations Plaintiff or Defendants cite.  The regulation Plaintiff cites as "set[ting] forth a primary-industry analysis," 13 C.F.R. § 121.107,[4] provides only the following:

> In determining the primary industry in which a concern or a concern combined with its affiliates is engaged, SBA considers the distribution of receipts, employees and costs of doing business among the different industries in which business operations occurred for the most recently completed fiscal year. SBA may also consider other factors, such as the distribution of patents, contract awards, and assets.

13 C.F.R. § 121.107.  The regulation itself is titled, "How does SBA determine a concern's 'primary industry'?"  Id.  Although the regulation explains how the SBA determines a "primary industry," nothing in that regulation—or any statute, rule, or

---

[4] Note forty-two in Plaintiff's Motion for Summary Judgment indicates Plaintiff locates the "primary-industry analysis" in 13 C.F.R. § 121.107.  (Dkt. # 37 at 10, n.42.)

regulation the Court can find—<u>requires</u> the SBA to assess a concern's primary industry for PPP or Section 7(a) loans. In the absence of such authority, the Court cannot say that the SBA exceeded its statutory authority in stating that there was "no place" for considering what Plaintiff's "primary industry" should have been. 5 U.S.C. § 702(2)(C). The Court thus **DENIES** Plaintiff's motion as to this point.

II.     <u>Whether the SBA's Action was Arbitrary and Capricious</u>

For the reasons discussed below, the Court finds the SBA did not act arbitrarily or capriciously.

A.     <u>The SBA Action</u>

*Initial Decision.* In its Initial Decision, the SBA first noted that Plaintiff exceeded both the Employee-Based size standard and the Receipts-Based size standard to be eligible for a PPP loan. (Dkt. # 30-2 at 38–39.) The SBA also found Plaintiff was ineligible for an affiliation waiver because it did not have a NAICS Code beginning with 72. (<u>Id.</u> at 39.) The SBA reasoned that Plaintiff's largest source of revenue was from membership as opposed to an industry with a NAICS Code beginning with 72. (<u>Id.</u>) Finally, the SBA noted that it had requested additional documentation to evaluate Plaintiff's eligibility under an alternative size standard, but that Plaintiff had failed to provide the requested documentation. (<u>Id.</u>)

*SBA-OHA's Final Decision*. Plaintiff's contention on appeal to the SBA-OHA was that the SBA conducted a "faulty 'primary industry' analysis,"

12

which led SBA to conclude that Plaintiff was not entitled to a NAICS Code 72

waiver.  (Dkt. # 30-43 at 188.)  In reaching that question, the SBA-OHA

Administrative Law Judge ("ALJ") found the Initial Decision was not based on

clear error to the extent the SBA declined to apply the NAICS code 72 waiver

because "[a]lthough not discussed in the [Initial Decision], [Plaintiff] identified

itself on its PPP Loan Forgiveness Application, as well as its tax returns as having

a NAICS Code that begins with 71."  (Id. at 191.)

> The ALJ then explained that Plaintiff's argument flows first from 13

C.F.R. § 121.107, which the Court has discussed above.  Again, that provision

provides:

> In determining the primary industry in which a concern or a concern
> combined with its affiliates is engaged, SBA considers the distribution of
> receipts, employees and costs of doing business among the different
> industries in which business operations occurred for the most recently
> completed fiscal year. SBA may also consider other factors, such as the
> distribution of patents, contract awards, and assets.

13 C.F.R. § 121.107.  The ALJ noted that Plaintiff's argument focused on what

NAICS Code "should have been" assigned by the SBA to Plaintiff "long after the

PPP loan was disbursed."  (Dkt.  30-43 at 192.)  As the ALJ correctly pointed out,

the CARES Act waived affiliation rules only for a business concern who "*as of the*

*date on which the covered loan is disbursed*, is assigned a North American Industry

Classification System code beginning with 72."  15 USC 636(a)(36)(D)(iv)

(emphasis added).  The ALJ reasoned that at the time the PPP loan was disbursed

on April 28, 2020, Plaintiff "was assigned" NAICS Code 713900.  That was the code listed on Plaintiff's 2019 tax return and its SBA Form 3511, even if Plaintiff advocated for changing the code.  (Dkt. # 30-43 at 192.)  The ALJ further reasoned that Plaintiff did not change its NAICS code for tax purposes until February 2023 when it informed the IRS of its plans to do so.  (Dkt. # 30-43 at 192.)

The ALJ found that Plaintiff had not carried its burden of demonstrating that, as of the date the loan was disbursed, Plaintiff "was assigned" a NAICS code beginning with 72.  The ALJ added that SBA's PPP rules use the NAICS Code a borrower self-assigned for tax purposes, saying that "the PPP loan forgiveness application form [Plaintiff] used incorporate[s] the borrower's NAICS code from the borrower's tax return, and, in turn, SBA uses the PPP loan application form and PPP loan forgiveness application form to determine PPP eligibility."  (Id. at 193.)

The ALJ considered Plaintiff's "primary industry" argument but concluded that the CARES Act considers the NAICS Code that a borrower 'is assigned' for wavier purposes, and that "SBA rules consider [Plaintiff]'s PPP Loan Forgiveness Application—which uses the NAICS Code that [Plaintiff] assigned itself—for determining eligibility."  (Dkt. # 30-43 at 193.)  The ALJ concluded by noting that both Plaintiff's PPP Loan Forgiveness Application, as well as its 2019

IRS Form 1065 and 2020 IRS Form 1065, list a NAICS code beginning with 71.

(Dkt. # 30-43 at 194.)

      B.    <u>SBA's Action was Not Arbitrary or Capricious</u>

      The record indicates that at the time Plaintiff's loan was disbursed, it was assigned a NAICS code that did not begin with 72.  The CARES Act waived affiliation rules for "any business concern with not more than 500 employees that, as of the date on which the covered loan is disbursed, is assigned a North American Industry Classification System code beginning with 72."  15 U.S.C. § 636(a)(36)(D)(iv).  As of the date of disbursement (April 28, 2020), Plaintiff was assigned a NAICS code of 713900 since that code was listed on both its 2019 and 2020 tax returns.  (Dkt. # 30-11 at 30; Dkt. # 30-16 at 35; Dkt. # 30-30 at 47; Dkt. # 30-43 at 192.)  Plaintiff's Application for Loan Forgiveness, submitted on September 24, 2021, also listed a NAICS Code of 71390.  (Dkt. # 30-3 at 73.) When Plaintiff submitted additional information to the SBA in April 2022, Plaintiff again acknowledged it used NAICS code 713900 for tax purposes but argued affiliation waiver should apply because Plaintiff's dominant employee count was in an industry beginning with 72.  (Dkt. # 30-10 at 17–19.)  Plaintiff sent the SBA additional information in September 2022 in further support that it should be considered a NAICS Code 72 entity.  (Dkt. # 30-32 at 15–27.)

The ALJ correctly explained that the statute says only that waiver is based on what a business concern "is assigned," not what it "should have been assigned."  15 U.S.C. § 636(a)(36)(D)(iv) (emphasis added).  There is no statute, rule, or regulation requiring the SBA to conduct its own analysis of a borrower's primary industry for purposes of selecting a NAICS code for affiliation waiver purposes.  13 C.F.R. § 121.107 explains how the SBA assesses a concern's "primary industry," but it does not indicate that the SBA must engage in such assessment for evaluating eligibility for Section 7(a) or PPP loans.

As the ALJ explained, the SBA rules consider a borrower's PPP Loan Forgiveness Application, which directs borrowers to use the NAICS Code the borrower provided to the IRS for tax purposes.[5]  The Loan Forgiveness Procedures Interim Final Rule provides that the Administrator may review a borrower's PPP eligibility based on the Loan Forgiveness Application Form.  Business Loan Program Temporary Changes; Paycheck Protection Program—Loan Forgiveness

---

[5] Plaintiff used the July 30, 2021 version of the SBA Form 3508EZ for its PPP Loan Forgiveness Application Form.  (Dkt. # 30-3 at 73.)  The ALJ correctly noted that the instructions for that version direct borrower to use the NAICS Code from the borrower's tax return: "[i]f NAICS Code was not on the Borrower Application Form, match the business activity code provided on IRS income tax filings, if applicable."  PPP Loan Forgiveness Application Form 3508EZ Revised July 30, 2021, *available at* https://home.treasury.gov/system/files/136/PPP--Forgiveness-Applications-and-Instructions--3508EZ-7-30-2021-508.pdf (last visited September 11, 2025).

<u>Requirements and Loan Review Procedures as Amended by Economic Aid Act</u>, 86

Fed. Reg. 8283, 8294(V)(1)(a) (Feb. 5, 2021).  Taken together, the Court finds it

was not arbitrary or capricious for the SBA to rely on Plaintiff's self-classified

NAICS Code.  And given that on the date of loan disbursement, the NAICS Code

listed on Plaintiff's 2019 tax return was not a 72 NAICS Code, the Court finds the

ALJ's Final Decision was reasonable and not arbitrary or capricious.  <u>Wages &</u>

<u>White Lion Invs., L.L.C. v. United States Food & Drug Admin.</u>, 16 F.4th 1130,

1136 (5th Cir. 2021).

   Plaintiff's arguments to the contrary are unavailing.  Plaintiff first

argues the SBA acted arbitrarily and capriciously by failing to articulate a

sufficient explanation for departing from prior practice of considering PPP loans

under general Section 7(A) loan rules.  Plaintiff argues the SBA had a well-

established practice of conducting a "primary-industry analysis," and that it

disregarded that practice by suggesting that the PPP rules look only to self-

classification.

   As discussed, the term "primary-industry analysis" does not appear in

the cited statutes, regulations, or rules.  Plaintiff's authorities do not support the

proposition that the SBA is required to conduct a specific analysis into a concern's

primary industry for PPP or Section 7(a) loan eligibility purposes.  <u>See, e.g.</u>, 13

C.F.R. § 121.101(a) (noting that size standards have been established generally

under NACIS); 13 C.F.R. § 121.101(b) (explaining NAICS); 13 C.F.R. § 121.107

(explaining *how* SBA determines a concern's "primary industry," but not indicating

SBA is *required* to evaluate a concerns "primary industry"); 13 C.F.R. § 121.301

(explaining what size standards and affiliation principles are applicable to financial

assistance programs).  Plaintiff cites several SBA-OHA decisions concerning

appeals of size determinations for the proposition that an area office must conduct

a "primary-industry analysis."  (Dkt. # 37 at 13); see, e.g., Size Appeal of:

Mclendon Acres, Inc., Appellant, SBA No. SIZ-5222, 2011 WL 1661922 (Mar. 25,

2011) (concerning appeal of official size determination made by an Area Office);

Grp. O, Inc., SBA No. SIZ-4441, 2001 WL 789239 (June 28, 2001) (same); Size

Appeal of Sargent Pipe Co., Inc., SBA No. SIZ-2691, 1987 WL 93652 (June 16,

1987) (same).  Those decisions are inapposite because they each concern a formal

size determination—a distinct and separate process from determining PPP loan

eligibility.[6]  Moreover, Plaintiff does not assert that it ever requested a formal size

determination.

---

[6] A formal size determination may occur when SBA questions whether a business
concern who has applied for financial assistance is "small." 13 C.F.R.
§ 121.303(a).  If an application for financial assistance is denied due to size
ineligibility, an applicant may request a formal size determination.  13 C.F.R.
§ 121.303(d).  To do so, a formal request must be made to the Government
Contracting Area Director serving the area where the applicant's headquarters is
located.  Id.  An applicant may appeal adverse formal size determinations to the
OHA.  13 C.F.R. § 121.1101.  A NAICS code designation made by a procuring
activity contracting officer may also be appealed.  13 C.F.R. § 121.1102.

Finally, Plaintiff argues the SBA conducted a faulty "primary-industry analysis" in the SBA's Initial Decision because the analysis ignored Plaintiff's affiliates and considered only Plaintiff's revenue, which Plaintiff argues is not an enumerated factor under the "primary-industry analysis." Defendant responded to that argument by asserting that the Initial Decision considered an "entire set of financial data submitted by Plaintiff's attorneys as part of its multi-level forgiveness analysis." (Dkt. # 39 at 2.) Plaintiff replied that in making that argument, Defendants rely on improper *post hoc* rationalizations by conflating the Initial and Final decisions.

As Plaintiff itself notes, it is the SBA's Final Decision which is on appeal. (Dkt. # 42 at 6, n.17.) "The federal courts ordinarily are empowered to review only an agency's *final* action." Nat'l Ass'n of Home Builders v. Defs. of Wildlife, 551 U.S. 644, 659 (2007) (emphasis in original). Moreover, even if an agency abandons an earlier ruling, "the dispositive factor is that the [agency] justif[ies] its position within the statutory framework." Texaco, Inc. v. N.L.R.B., 700 F.2d 1039, 1043 (5th Cir. 1983); see also Orleans Audubon Soc. v. Lee, 742 F.2d 901, 907 (5th Cir. 1984) (noting that "[e]ven when an agency abandons a prior determination the reviewing court should affirm the agency's decision if the *final* agency action is not arbitrary or capricious") (emphasis in original). The Court

does not address this argument because it finds, as discussed above, that the SBA's

Final Decision was not arbitrary capricious.  See Orleans, 742 F.2d at 907.

   For these reasons, the Court finds the decision was based on

consideration of the relevant factors and further finds there has been no clear error

of judgment.  Huawei Techs. USA, Inc. v. Fed. Commc'ns Comm'n, 2 F.4th 421,

434 (5th Cir. 2021) (indicating the agency "must articulate a satisfactory

explanation for its action," but that the Court "cannot substitute [its] judgment for

that of the agency").  The Court therefore **GRANTS** Defendants' motion for

summary judgment, finding the SBA did not act arbitrarily or capriciously and

**DENIES** Plaintiff's motion.

CONCLUSION

   Accordingly, the Court: (1) **DENIES** Plaintiff's Motion for Summary

Judgment (Dkt. # 36); and (2) **GRANTS** Defendants' Motion for Summary

Judgment (Dkt. # 37). Plaintiff's claims are **DISMISSED WITH**

**PREJUDICE** and the Clerk's Office is **INSTRUCTED to ENTER**

**JUDGMENT** and **CLOSE** the case.

   **IT IS SO ORDERED**.

   Dated: September 15, 2025.

David Alan Ezra
Senior United States District Judge